TAYLOR V. MISSISSIPPI MILLS.

1. FRAUD: *Purchase with intent not to pay.*

A debt is created by fraud where one intending not to pay for goods induces their owner to sell them on credit. The purchaser in such case takes only a defeasible title, and on discovery of the fraud the vendor may disaffirm the contract and reclaim the goods unless they have passed into the hands of a *bona fide* purchaser. An attaching creditor of the fraudulent vendee is not a *bona fide* purchaser for value as against the defrauded vendor.

2. SAME: *Evidence of fraudulent intent.*

The fraudulent purpose of a vendee not to pay for goods purchased can rarely be proved by direct evidence, such as declarations to that effect. It is usually established by circumstances from which a jury may infer the intent.

3. SAME: *Same; Test of the fraudulent intent.*

The test of a fraudulent purchase is the preconceived intention to get the goods without paying for them, and not a mere legal or constructive fraud.

APPEAL from *Crawford* Circuit Court.

Hon. R. B. RUTHERFORD, Circuit Judge.

*U. M. & G. B. Rose* for Appellant.

The permitting a false rating of their standing on the books of Dun & Co., calculated to give them credit, was not a fraud. There is nothing to show that the purchasers had anything to do with that, or that the plaintiffs had ever seen or relied upon it, or that it was not true when made, or that it was made to deceive. *23 Barb., 561.*

2. It is not every misrepresentation that will avoid a sale. To have that effect the representations must be vital, must relate to the transaction in question, and must induce the purchaser to part with his property. *Bigelow on Fraud, 14, 18, 23, sec. 4, p. 65, sec. 6, p. 87; 13 Wall., 383.*

A sale is not necessarily fraudulent because the vendee at the time of purchase is insolvent, and knew himself to be so,

and does not communicate this circumstance to the vendor, who is ignorant of it. *9 Gill & J., 220.*

A debt is created by fraud where one intends not to pay for goods, and induces their owner to sell them to him on a credit, by fraudulently representing, or causing the owner to believe, he intends to pay for them, or fraudulently concealing his intent not to pay. *Stewart v. Emerson, 52 N. H., 301.*

The intention of the buyer at the time of buying, not to pay for the goods, together with his insolvency at that time, and his knowledge of it not communicated to the seller will not avoid the sale. In order to avoid the sale, there must have been artifice intended and fitted to deceive. *Smith v. Smith, 31 Penn. St., 367; Backentoss v. Seicher, 31 Id., 324.*

There must be some evidence of an improper motive. *Patton v. Campbell, 70 Ill., 75.*

Mere concealment of the fact by the buyer that he is insolvent will not avoid the sale. *Mears v. Waples, 3 Houston (Del.), 582.*

The mere knowledge of his insolvency on the part of the buyer will not avoid the sale. In order to produce that effect some dishonest purpose must be shown. *Garbutt v. Bank, 22 Wis., 392; Nicholls v. Pinner, 18 N. Y., 299; Rodman v. Thalheimer, 75 Penn. St., 232.*

If the vendor would rescind the contract for the sale of the goods on account of a fraud of the vendee, it must appear that deceptive assertions and fraudulent representations were made to induce him to part with his goods. The mere insolvency of the vendee, and the liability of the goods to immediate attachment by his creditors, though well known to himself and not revealed to the vendor, will not be sufficient to avoid the sale. *Cross v. Peters, 1 Greenl., 343.*

A buyer who procures goods on a credit, knowing at the time of his insolvency and inability to pay for them, but being

without a preconceived design not to pay, is not guilty of such fraud as will avoid the sale. *19 Mo., 36; 43 Conn., 324.*

The fact that G. & H. were hopelessly insolvent does not avoid the sale. Their knowledge of the insolvency must be shown. *4 Seld., 133; 7 Greenl., 376; 10 Am. Dec., 78.*

The sale of goods on credit is void for fraud if induced by false representations on the part of the vendee as to his pecuniary ability to pay; but the buyer is not bound to disclose his pecuniary circumstances unless asked to do so. *33 Cal., 620; 25 Vt., 687.*

Fraud must be proved affirmatively. *18 N. Y., 300.*

*Brown & Sandels* also for Appellant.


*Collins & Balch* for Appellee.

The facts in this case justified the court below in avoiding the sale for fraud. Aside from the false representations made by the vendees in this case, as to their solvency, ability to pay, etc., there is sufficient in the record to have warranted the trial court in finding that in purchasing the goods they did so with the intention not to pay for same. *Talcott v. Henderson, 31 Ohio St., 162.*


SMITH, J. This was an action of replevin by a corporation of the State of Mississippi for the recovery of certain goods which it had sold to Goodman & Howitz. The defendant was the sheriff of Crawford county and had seized the goods as the property of Goodman & Howitz under sundry writs of attachment.

The cause was tried before the court without a jury upon the following agreed statement of facts:

"That on the 24th day of November, 1884, the plaintiff, a wholesale merchant doing business in the state of Mississippi,

by its authorized agent went to Messrs. Goodman & Howitz, retail merchants doing business in the town of Van Buren, Arkansas. After having made some inquiries about the commercial standing of the said Goodman & Howitz, and after an examination of the report made by R. G. Dun & Co's commercial agency reports, which the said Goodman & Howitz knew to be in existence, which said report shows that said Goodman & Howitz were at the date of said report, to-wit: October 1, 1884, worth five thousand dollars over and above their liabilities, said plaintiff solicited the said Goodman & Howitz for the purpose of selling them a bill of goods; but not being fully satisfied, had another conference with them when plaintiff proposed to sell them. Goodman & Howitz asked the terms, whereupon plaintiff replied, that to perfectly good men their rule was two and four months time. Goodman & Howitz replied, "we reckon we are good; we discount most of our bills before maturity." The plaintiff, believing these statements to be true and acting upon them, sold them the property in controversy. Goodman & Howitz at the time reserving the right to discount said bills before maturity. Said goods were received by said Goodman & Howitz on or about the 15th day of December, 1884. On the 27th day of December, 1884, Goodman & Howitz made a voluntary assignment to Berkley Neal for the benefit of his creditors. Said deed of assignment, with the list of creditors and indebtedness attached to the same, is admitted as evidence on the trial of this cause, the same as if here set out word for word. Goodman & Howitz, at the time of said purchase owned no real estate and no personal property, except their stock of merchandise and notes and accounts, which altogether was worth about the sum of $8000. After the purchase the said Goodman & Howitz continued in business until the date of said assignment. They paid little or nothing of their indebtedness after the purchase made of the plaintiff, except clerk hire and running expenses. After the said purchase made of the plaintiff, they purchased about $600 of goods from other parties. Their stock

of merchandise, notes and book accounts, amounted in the aggregate to the sum of $6000 at the time they filed their assignment. They delivered no money to the said assignee and claimed to have none. The said stock of goods and book accounts was all the property they claimed to have, except their household goods and wearing apparel, which amounted to but little. The defendant, William L. Taylor, as sheriff of Crawford county, was in possession of the property in controversy at the institution of this suit, by having levies on the same, by virtue of the several writs of attachment in his hands, as alleged in his answer to the complaint. The said property was, at the time of the said levy, in the possession of Goodman & Howitz. The said defendant had no knowledge of any lien or right that the plaintiff claimed to said property at the time he made his levy.

"The property mentioned in the plaintiff's complaint is the property in controversy and the same property that was sold by plaintiff to the said Goodman & Howitz. The plaintiff, prior to the commencement of this action, made a demand of the defendant for said goods, alleging that the same had been obtained by fraud.

"The property, it is admitted, was, at the commencement of the suit, of the value sworn to in the plaintiff's affidavit and complaint.

" The several writs of attachment aforesaid, and returns of inventories made by said sheriff, are admitted as part of this agreement of facts, and to be read in evidence; and also all papers, proceedings and records connected with the same, and all suits and papers connected with the same, against said Goodman & Howitz."

The deed of assignment, referred to in the statement of facts, showed the indebtedness of the firm, on the 27th of December, 1884, to be $23,508.43.

There was no other testimony in the case.

Taylor v. Mississippi Mills.

The circuit court found that "said goods having been obtained from plaintiff by fraud, the sale was voidable, and that having not been transferred by said Goodman & Howitz to any third person for value, but being in the possession of the sheriff under attachments by creditors of Goodman & Howitz, that plaintiffs were entitled to rescind the contract of sale and bring their action to recover possession of the goods."

And judgment was rendered for the plaintiff. The only question is, whether such finding and judgment are according to the evidence and the law.

1. FRAUD:—
Purchase with
intent not to
pay.

A debt is created by fraud, when one, intending not to pay. for goods, induces their owner to sell them on credit. The purchaser in such case, takes only a defeasible title. On discovery of the fraud, the vendor may disaffirm the contract and reclaim the goods, provided they have not passed into the hands of *bona fide* purchasers. But to avoid a sale on the ground of fraud, a dishonest intention must exist at the time in the mind of the vendee; an actual intention to cheat, or to do an act the necessary result of which will be to defraud the seller. *Benjamin on Sales, 4 Am. ed., secs. 429, 430, 433, 440; Ex parte Whittaker, L. R. 10 Ch. App., 446; S. C. 14 Moak's Eng. Rep., 722; Donaldson v. Farwell, 93 U. S., 631; Biggs v. Barry, 2 Curtis, 259; Stewart v. Emerson, 52 N. H., 301; Hoffman v. Noble, 6 Metc. (Mass.), 68; Cross v. Peters; 1 Greenleaf, 343; Nichols v. Pinner, 18 N. Y., 295; Merritt v. Robinson, 35 Ark., 483; Bridgford v. Adams, 45 Id., 136.*

So also the purchaser may avoid the contract for false and fraudulent representations of the seller. *Plant v. Condit, 22 Ark., 454; Morton v. Scull, 23 Id., 289; Rightor v. Roller, 31 Id., 170.*

As against a deceived vendor, an attaching creditor of the fraudulent vendee is not an innocent purchaser for value. *Wiggin v. Day, 9 Gray, 97; Hoffman v. Strohecker, 7 Watts, 86.*

The fraudulent purpose of the vendee not to pay for the $\quad$ 2. How proven goods can rarely be proved by direct evidence, such as declarations to that effect. It is usually established by circumstances from which the jury may infer the intent.

One circumstance that was relied on as indicating fraud in $\quad$ 3. SAME. this transaction was, that Goodman & Howitz knowingly suffered a false rating of their financial condition and resources to be carried on the books of a mercantile agency, calculated to give them credit.

In *Lindauer v. Hay, 61 Iowa, 663; 17 S. C. Cent. L. Jour., 411*, such conduct on the part of an insolvent purchaser, who, three days after receiving the goods, made an assignment for the benefit of his creditors, was held sufficient to warrant a verdict against the assignee.

In the present case, it is not shown that Goodman & $\quad$ 4. Test of the Howitz had any connection with the making or publication of $\quad$ fraud the statement, or that it was false when it was made. If it was correct at the time, and the insolvency occurred afterwards, to require of a tradesman to advertise to the world his failing circumstances is too exacting. Nevertheless, such evidence, along with other indicia of fraud, is proper to be submitted to a jury; though, if it stood alone, we think it would hardly suffice to justify a verdict for the vendor, when we remember that, in this class of actions, the final test is a preconceived intention to get the goods without paying for them, and not a mere legal or constructive fraud.

But it was further admitted that Goodman & Howitz were, at the time of the purchase, hopelessly insolvent, and could not reasonably have expected to pay for the goods; that they represented themselves to be solvent, when in fact they owed about $23,000, and had only $8000 of assets; and falsely asserted that they were in the habit of discounting their bills before maturity; and stipulated for the privilege of so discount-

ing the bills given on this purchase. These facts authorized the court, which sat in the place of a jury, to find that they never intended payment.

Affirmed.