## W. W. JOHNSON COMPANY *v.* TRIPLETT.

Opinion delivered March 4, 1899.

SALE—RESCISSION FOR FRAUD.—In a suit by a vendor of personal property to rescind the sale for fraud, and to replevy such property, where plaintiff's contention was based on two grounds, viz., (1) that the vendee did not, at the time of its purchase, intend to pay for the property, (2) that the sale was induced by false representations of the vendee as to her financial condition, it was error for the trial court by its instructions to confine the jury's attention solely to the question whether or not the vendee at the time of the purchase intended to pay for the property.  (Page 236.)

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

*Bridges & Wooldridge*, for appellant.

It was error for the court to instruct the jury that it should not take into consideration the false representations made by Wertheimer as to her solvency, unless they should find that she purchased the goods with the preconceived intention of not paying for them.  64 Ark. 12.  This vice in the first, second, third, sixth, seventh and eighth instructions is not cured by giving other and correct instructions on the point.  44 S. W. 715.

*Austin & Taylor*, for appellee.

Before plaintiff could maintain any suit it was necessary to place Wertheimer in *statu quo* by returning the acceptance given for goods.  59 Ark. 259; 35 Ark. 483.  Since the sheriff did not claim title, demand was necessary before suit.  23 Ark. 417; 24 Ark. 264; 35 Ark. 169.  A judgment which is right upon the whole record will not be reversed, though incompetent evidence was admitted or improper instructions given.  10 Ark. 9; 44 Ark. 556; 46 Ark. 542; 43 Ark. 296; 24 Ark. 587.

WOOD, J.  This suit was brought on the 14th day of April, 1896, by appellant, W. W. Johnson Company, to replevy ten barrels of liquor from appellee, C. H. Triplett, sheriff of

Jefferson county.   The liquor was sold for $580.63 on a credit of two and four months by appellant on February 29, 1896, to E. Wertheimer, who was at that time engaged in the wholesale liquor business at Pine Bluff, Arkansas.   On December 4, 1895, Ed. Wertheimer, son of and representing E. Wertheimer in her business, made a commercial statement of the financial condition of her business, as it existed November 1, 1895, unto Damon Clarke as a representative of the commercial agency of R. G. Dun & Co., a copy of which statement was forwarded by the Little Rock office of the agency to its office in Cincinnati, Ohio.   The appellant obtained a copy of this statement from the Cincinnati office of this commercial agency, and, relying upon ' the truthfulness of the statement, sold the liquors in question, and other goods, to E. Wertheimer.   The business of E. Wertheimer was conducted and managed by her sons, Ed. Wertheimer and Lee Wertheimer, and her husband, Jacob Wertheimer.   Ed. Wertheimer did most of the buying and ordering of the goods.

On the 4th day of April, 1895, attachment suits were filed in the Jefferson circuit court against E. Wertheimer by various creditors for amounts aggregating about $19,000.   Her sons, Ed. and Lee Wertheimer, were among the attaching creditors for the sums of $3,306.05 and $4,709.27 respectively.   The writs of attachment were delivered to the sheriff of Jefferson county on the same day, and levied upon the property of E. Wertheimer, including the mercantile stock.   The liquor in question was attached as the property of E. Wertheimer, and, while the sheriff was holding it under these attachments, appellant replevied it from him, and thereby obtained possession of the liquor.   Evidence was adduced tending to show that the statement made to the commercial agency was false.   The verdict was for the appellee.   The facts were controverted, and there was evidence to support the verdict on the questions of fact arising in the case.   Was the jury properly instructed?

At the request of plaintiff the court gave the following: "3.   If the jury find from the evidence that E. Wertheimer, during the month of November, 1895, while knowing herself to be insolvent, made a false statement to the commercial agency, showing herself to be solvent, for the purpose of obtaining

goods on a credit, and that the plaintiff, relying upon the truth-fulness of said statement, contracted to sell her the liquor in controversy, the jury will find for the plaintiff."

And at the request of the defendant the court instructed the jury as follows: "1.   The court instructs the jury that although they believe that there may be some evidence in this case tending to show that the said E. Wertheimer was insolvent at the time of the purchase of the goods in controversy, this is not sufficient to show fraud in the sale of said goods; but before plalntiffs can recover they must show, by a preponder-ance of the testimony, that the said E. Wertheimer, at the time of the purchase of the goods, did not intend to pay for them."

"2.   The court instructs the jury that no mere legal or constructive fraud shown from the evidence in this case will en-title the plaintiff to recover; but, before they can recover as against defendants, plaintiffs must show, by a preponderance of the evidence, a preconceived intention on the part of the vendee, E. Wertheimer, to get the goods for which the suit is brought without paying for them.

"6.   The jury are instructed that, although they may be-lieve from the evidence that E. Wertheimer, at the time of the purchase of the goods in controversy in this suit, was insolvent, and knew herself to be so, and did not disclose this fact to the plaintiffs, still the said Wertheimer would not be guilty of fraud, so as to vitiate the contract for the sale of the said goods, provided the jury further believed from the evidence that she then intended to pay for the said goods."

"7.   The court instructs the jury that E. Wertheimer had a lawful right to make contracts for the purchase of goods at any and all times, whether she was insolvent or not, and the question of her insolvency at the time the goods in controversy were ordered, or at any other time, will not be considered by the jury, except as it may throw light on the question as to whether or not she intended to pay for the said goods at the time they were ordered.

"8.   The court further instructs you that, before the plain-tiffs can recover in this action, they must show by a preponder-ance of the evidence that the property in controversy, at the time of the institution of this suit, was wrongfully detained by

the defendant, C. H. Triplett, as sheriff; and if the plaintiff had failed in this, they will find for the defendant, and assess the value of the property at $630.63, with six per cent. interest thereon per annum from the 14th day of April, 1896, to the present time, unless the plaintiff has shown that E. Wertheimer, at the time she purchased the goods from the plaintiff, did so with the preconceived intention of getting the goods without paying for them, and this must be proved by the plaintiffs by a preponderance of the evidence."

The appellant saved proper exceptions. In the court below it was contended that plaintiff should recover for two reasons: First, because E. Wertheimer did not intend to pay for the liquor in controversy at the time she purchased same; second, because E. Wertheimer obtained the liquor on a credit by making false representations as to her financial condition.

The court's instructions upon these two propositions, taken as a whole, are irreconcilable, confusing, and well calculated to mislead the jury. The court properly tells the jury, in the instruction given at the request of plaintiff, that if E. Wertheimer, knowing herself to be insolvent, made a false statement to the commercial agency showing herself to be solvent, for the purpose of obtaining goods on a credit, such false representations would entitle the seller to rescind the sale, and to recover the property obtained by reason of such representation. This would be a fraud on the seller, and sufficient of itself to avoid the sale and give the seller the right to recover the property sold upon the faith of such representation, as we held in *Taylor* v: *Mississippi Mills*, 47 Ark. 247, and *Bugg* v. *Wertheimer-Schwartz Shoe Co.*, 64 *id.* 12. But in the eighth instruction, given at the request of defendant, the court tells the jury that "unless the plaintiff has shown," by a preponderance of the evidence, "that E. Wertheimer, at the time she purchased the goods from the plaintiff, did so with the preconceived intention of getting the goods without paying for them, they should find for the defendant." And in the seventh the court tells the jury that "the question of her [E. Wertheimer's] insolvency at the time the goods in controversy were ordered, or at any other time, will not be considered by the jury, except as it may throw light on the question as to whether or not she intended to pay for the

said goods at the time they were ordered." It is not pretended that there were any fraudulent representations to induce the sale, except as to the solvency of E. Wertheimer, and yet the court tells the jury that the question of her insolvency will not be considered "except as it may throw light on the question as to whether or not she intended to pay for the said goods." These and other instructions given at the request of the defendant seem to hinge the plaintiff's right to recover solely upon the question as to whether or not E. Wertheimer at the time of her purchase intended to pay for the liquor sold her. The instructions should be drawn in harmony with the doctrine announced by this court in the cases cited above, and tell the jury that plaintiff would have the right to recover the liquor sold if the sale was superinduced by false representations of E. Wertheimer, or if she intended, at the time of the purchase, not to pay for the liquor bought. Either or both of these facts, if established, would avoid the sale, and give plaintiff the right to recover.

For the errors indicated, reverse the judgment, and remand the cause for a new trial.