In re MacMILLAN PETROLEUM (ARKANSAS), INC., Debtor.

A.V. BEEBE, et al., Plaintiffs,

v.

MacMILLAN PETROLEUM (ARKANSAS), INC., et al., Defendants.

Bankruptcy No. ED 87–149M.
Adv. No. 88–353M.

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

June 6, 1990.

---

H. Derrell Dickens, El Dorado, Ark., for Phillips Petroleum Co.

Charles T. Coleman, Little Rock, Ark., for MCorp Management Solutions, Inc.

Wm. Randal Wright, Hope, Ark., trustee.

Geoffrey B. Treece, Little Rock, Ark., for trustee.

Bobby E. Shepherd, El Dorado, Ark., for plaintiffs.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On August 25, 1987, twenty-one plaintiffs (plaintiffs) filed a petition for an order of reclamation of quantities of crude oil in the Chancery Court of Union County, Arkansas, against MacMillan Petroleum (Arkansas), Inc., MacMillan Petroleum Company and MacMillan Ring–Free Oil Company, Inc. On the same day, the Chancery Court issued a temporary injunction prohibiting the defendants from disposing of or processing the oil. The Chancery Court appointed Joe D. Woodward as special master and, on October 1, 1987, the master filed a report recommending that the 35,233 barrels of crude oil stored at the facilities of MacMillan (Arkansas) be sold in bulk and the proceeds of the sale deposited into the registry of the Court pending a determination of the claims against the proceeds.

On October 21, 1987, an involuntary petition in bankruptcy was filed against Mac-Millan (Arkansas) (the debtor) and the debtor consented to the entry of an order of relief. The case was converted to chapter 11 on motion of the debtor and was reconverted to chapter 7 on July 27, 1988. On August 30, 1988, the state court reclamation action was removed to bankruptcy court.

MCorp Management Solutions, Inc.,[1] one of numerous intervenors in the case, filed a motion for summary judgment on October 11, 1988. The plaintiffs filed a motion for summary judgment on December 13, 1989, and Phillips Petroleum Company, another intervenor, filed a motion for summary judgment on December 11, 1989.

For purposes of its motion for summary judgment only, MCorp stipulated that all reclamation claims were made timely and in the manner prescribed by applicable law. In support of its motion, MCorp submitted the affidavits of Mynan H. Crockett and Jesse E. Neyman, both vice presidents of MCorp, and Jim Byrd, assistant manager of the debtor during the relevant time period.

Byrd stated in his affidavit that the debtor's normal and regular business consisted of purchasing crude oil from various producers, refining the crude oil, and selling or distributing the refined petroleum products. Byrd stated that the crude oil seized by the Chancery Court was being held for resale or as raw materials, work in process, or materials used or consumed in the regular course of the debtor's business. Byrd stated that had the crude oil not been seized by the Chancery Court, the debtor would have refined the crude oil and distributed and sold the resulting petroleum products to its customers in the regular course of its business.

According to Crockett's affidavit, the debtor was indebted to MCorp in the amount of $10,917,216.00, including interest, as of June 2, 1988. This indebtedness was evidenced by two notes, one dated June 5, 1987, in the amount of $14,650,-000.00, and the other dated October 6, 1987, in the amount of $2,500,000.00. Crockett stated in the affidavit that MCorp's collateral for the debt consisted of a perfected floating security interest in the debtor's inventory, accounts receivable, contract rights, cash, intangibles, and the proceeds and products thereof. Crockett stated that MCorp was substantially under-collateralized.

Attached to Neyman's affidavit were copies of the January 8, 1982, security agreement establishing MCorp's security interest in the debtor's inventory and the financing statements perfecting the security interest. The financing statement states that the collateral securing the indebtedness consisted of "[a]ll of debtor's right, title and interest in and to the debtor's inventory, whether now existing or hereafter arising including all proceeds therefrom and substitutions and accessions therefore [sic]." The security interest was properly perfected in 1982. Continuation statements were properly filed; therefore, the security interest was perfected on the day the petition was filed.

Phillips, in support of its motion for summary judgment against MCorp, submitted the affidavit of B.L. Jones, an employee of Phillips. In the affidavit, Jones stated that Phillips owns and operates various oil and gas wells in Ouachita, Union, and Bradley Counties, Arkansas. Some of the wells Phillips operates are owned partially by others, and Phillips is authorized to act as the owners' agents pursuant to various operating agreements. Jones stated that Phillips produced and sold directly to the debtor 35,445.84 barrels of crude oil in July 1987 and 25,197.63 barrels in August 1987. Jones stated that neither Phillips nor any of the interest owners had received payment for the crude oil delivered to the debtor. Jones stated that Phillips was authorized as agent to take such action as it deemed appropriate to protect the interest of each owner in respect to the crude oil delivered to the debtor.

No affidavits were filed in support of the plaintiffs' motion.[2]

The issue presented by the motions for summary judgment is whether MCorp's

---

1. MBank, Dallas, N.A., was the original intervenor in this action. By order entered February 28, 1990, MCorp, MBank's parent company, was substituted as the proper party in interest.

2. Bobby Shepherd, the attorney for the plaintiffs, and Derrell Dickens, attorney for Phillips, each filed an affidavit requesting additional time to file affidavits in response to the debtor's motion for summary judgment. However, the Court denied the request.

perfected security interest in after-acquired inventory of the debtor defeats the rights of reclaiming sellers represented by the plaintiffs and Phillips in the same inventory.

## I

## SUMMARY JUDGMENT

Summary judgment should be granted only where it appears that there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Bankruptcy Rule 7056; *Fields v. Gander*, 734 F.2d 1313, 1314 (8th Cir.1984); *Toshiba America, Inc. v. Video King of Illinois, Inc. (In re Video King of Illinois, Inc.)*, 100 B.R. 1008, 1012 (Bankr.N.D.Ill.1989). In determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the party opposing the motion for summary judgment and must give that party the benefit of all reasonable inferences drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987); *Fields v. Gander*, 734 F.2d at 1314. To be material, the fact in dispute must affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A party opposing a motion for summary judgment may not rely upon the mere allegations of its pleadings but must instead set forth, by affidavit or otherwise, specific facts showing that a genuine issue exists for trial. Fed.R.Civ.P. 56(e); Bankruptcy Rule 7056. *See Chauffeurs, Teamsters & Helpers Local Union 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1402–03 (8th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986).

## II

## CONFLICTS OF LAW

■ MCorp and the debtor agreed in the written security instrument that the law of Texas governed the rights of the parties. As the basis for their motions for summary judgment, the plaintiffs and Phillips have directed the Court's attention to a Texas statute[3] which they argue would give reclaiming sellers a priority over MCorp's security interest. However, that statute only applies to oil "extracted ... from the ground, the seabed, or other submerged lands within the jurisdiction of the State of Texas." Tex. Bus. & Com. Code Ann. § 9.319(q)(1) (Vernon 1968). Furthermore, under section 9–103(5) of the Uniform Commercial Code as adopted by both states, the law of the state where the oil was extracted governs issues of perfection and priority of security interests notwithstanding an agreement to the contrary. Ark.Code Ann. §§ 4–9–103(5), 4–1–105(2) (1987); Tex. Bus. & Com. Code Ann. §§ 9.103(e), 1.105(b). There is no dispute that the crude oil in question was extracted in Arkansas; therefore, Arkansas law governs the issue before the Court. The motions for summary judgment filed by the plaintiffs and Phillips are denied.

## III

## RECLAMATION

■ 11 U.S.C. § 541(a) provides that property of the debtor's estate includes all legal and equitable interests of the debtor in property as of the commencement of the case. The nature and extent of the debtor's interest in property are determined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir.1985). The estate has no greater rights in the property than those held by the debtor prior to bankruptcy. *Id.* at 467.

Before the adoption of the Uniform Commercial Code in Arkansas, sellers had a right to reclaim goods sold on credit under certain conditions. The reclaiming seller was required to establish that the buyer fraudulently induced the seller to sell goods on credit, while not intending to pay for them. *Taylor v. Mississippi Mills*, 47 Ark. 247, 1 S.W. 283 (1886). The buyer

---

**3.** Tex. Bus. & Com. Code Ann. § 9.319 (Vernon 1968).

acquired only a defeasible title subject to the seller's right to reclaim provided the goods had not passed into the hands of bona fide purchasers and provided that the goods could be identified. *Taylor v. Mississippi Mills*, 47 Ark. at 252, 1 S.W. at 285. *See also Lavender v. Finch*, 144 Ark. 199, 222 S.W. 35 (1920); *Neal v. Cone*, 76 Ark. 273, 88 S.W. 952 (1905). The defrauded seller's right to reclaim was superior to the rights of an attaching creditor because the attaching creditor was not considered a bona fide purchaser for value under these circumstances. *Taylor v. Mississippi Mills*, 47 Ark. at 252, 1 S.W. at 285.

Ark.Code Ann. § 4–2–702(3) now provides:

> (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this chapter (§ 4–2–403).

If MCorp has all the prerequisites of a good faith purchaser for value with a valid security interest in the debtor's after-acquired inventory, MCorp's security interest defeats the equitable rights of the reclaiming sellers. *See Shell Oil Co. v. Mills Oil Co.*, 717 F.2d 208 (5th Cir.1983); *Toyota Industrial Trucks USA, Inc. v. Citizens Nat'l Bank of Evans City*, 611 F.2d 465 (3d Cir.1979); *Los Angeles Paper Bag Co. v. James Talcott, Inc.*, 604 F.2d 38 (9th Cir.1979); *Stowers v. Mahon (In re Samuels & Co.)*, 526 F.2d 1238 (5th Cir.), *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler Supply Group)*, 74 B.R. 250, 253–54 (N.D. Ill.1987); *Pester Refining Co. v. Mapco Gas Products, Inc. (In re Pester Refining Co.)*, 66 B.R. 801, 815 (Bankr.S.D.Iowa 1986) *modified*, 845 F.2d 1476 (8th Cir. 1988); *Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.)*, 62 B.R. 315, 319 (Bankr.E.D.N.C.1986); *Lavonia Mfg. Co. v. Emery Corp.*, 52 B.R. 944, 946–47 (E.D.Pa.1985); *Petroleum Specialties, Inc. v. McLouth Steel Corp. (In re McLouth Steel Corp.)*, 22 B.R. 722, 724 25 (E.D.Mich.1982); *Action Industries, Inc. v. Dixie Enterprises, Inc. (In re Dixie Enterprises, Inc.)*, 22 B.R. 855, 859 (Bankr.S.D.Ohio 1982).

Under Ark.Code Ann. § 4–9–203, MCorp's security interest in the crude oil in question could attach and become enforceable only when the debtor had signed a security agreement describing the collateral, value had been given, and the debtor had obtained rights in the collateral. *See Findley Machinery Co. v. Miller*, 3 Ark. App. 264, 268, 625 S.W.2d 542, 544 (1981).

The security agreement executed by the debtor granted MCorp a security interest in after-acquired inventory of the debtor. *See* Ark.Code Ann. § 4–9–204. Phillips argues that the extent of the interest covered by MCorp's security documents is unclear and is, therefore, a material issue of fact. Phillips argues that MCorp's security interest is limited by the language in the security agreement which provides that the security interest covers "all of the Debtor's right, title and interest in and to its inventory." Phillips asserts that this description limits the security interest to the rights held by the debtor and that the debtor's rights to the crude oil in question were subject to the rights of reclaiming sellers. The crude oil in question constituted inventory of the debtor since, according to Byrd's affidavit submitted by MCorp, it was held by the debtor for resale or as raw materials, work in process, or materials used or consumed in the regular course of the debtor's business. Ark.Code Ann. § 4–9–109(4). Phillips' affidavit presented no facts to support its artificial distinction between "the debtor's rights in its inventory" and "the debtor's inventory." Moreover, at the time the security documents were executed and the debtor conveyed the security interest in its inventory, the inventory was not subject to the claims of these reclaiming sellers. Therefore, MCorp's security agreement encompassed the crude oil in question.

Although value (loan proceeds) was given before the debtor acquired its rights in the crude oil, Ark.Code Ann. § 4–9–108 provides that a security interest in after-acquired property is deemed to be taken for new value, and not as security for an antecedent debt, if the debtor acquires its

rights in the property in the ordinary course of business. *See Steinberg v. American Nat'l Bank & Trust Co. (In re Meyer Midway, Inc.)*, 65 B.R. 437, 445 (Bankr.N.D.Ill.1986); Note, Commercial Transactions—Secured Transactions Under the Uniform Commercial Code Section 9–108, 22 Ark.L.Rev. 501, 504–05 (1968). The debtor acquired title to the crude oil when it acquired possession because, under Ark. Code Ann. § 4–2–401(2), title passes to the buyer at the time and place at which the seller physically delivers the goods. *See also* Ark.Code Ann. § 4–2–106. It is undisputed that the debtor acquired the crude oil in its regular course of business. Therefore, since a valid security agreement existed and value had been given when the debtor acquired possession of the crude oil, MCorp's security interest attached at that time.

MCorp's security interest was properly perfected by the filing of the financing statement and continued by the continuation statement; therefore, the security interest in the after-acquired crude oil inventory was perfected upon the debtor's acquisition of the crude oil. Ark.Code Ann. § 4–9–303(1). *See Bank of the West v. Commercial Credit Financial Services, Inc.*, 852 F.2d 1162, 1167 (9th Cir.1988).

■ Phillips argues that MCorp has not established its status as an innocent or good faith purchaser. By taking its security interest by lien MCorp is considered under Arkansas law to be a purchaser of the security interest in the debtor's inventory. *See* Ark.Code Ann. § 4–1–201(32) and (33). The affidavit submitted by Phillips does not present any facts which indicate bad faith on the part of MCorp in acquiring the security interest. *See Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.)*, 62 B.R. 315, 319–22 (Bankr.E.D.N.C.1986).

Since neither Phillips nor the plaintiffs have established the existence of any fact issues for trial, MCorp's rights as a good faith purchaser, as a matter of law, defeat the rights of the reclaiming sellers. *See* Ark.Code Ann. § 4–2–702(3); Bankruptcy Rule 7056. Therefore, Phillips' motion for summary judgment and the plaintiffs' mo-

tion for summary judgment are denied. MCorp's motion for summary judgment is granted, and judgment will be entered in its favor.

IT IS SO ORDERED.