DEPOSIT GUARANTY NATIONAL BANK *v.*
RIVER VALLEY CO., INC. ET AL

5-4971                                  444 S. W. 2d 880

Opinion delivered September 29, 1969·

*Arnold, Hamilton & Streetman,* for appellant.

*James A. Ross* and *James A. Ross, Jr.,* for appellees.

GEORGE ROSE SMITH, Justice. This suit was brought by the appellant, a Mississippi bank, to enforce a $5,000 promissory note executed by the appellee River Valley Company and personally endorsed by its president and codefendant, the appellee Dr. A. F. Black. A few weeks before the suit was filed the bank had foreclosed in Mississippi a deed of trust securing a $21,000 note executed by River Valley only and had bid in the mortgaged property for $21,000. In the case at bar the chancellor held that the bank should have applied its bid pro rata against both notes, which would have left a balance of only $968 due on the $5,000 note. Judgment was accordingly entered for that amount. The bank contends that it is entitled to judgment for the full amount of the smaller note.

Despite a voluminous record the controlling facts are comparatively simple. In 1965 Black, a resident of Monticello, Arkansas, was the president of River Valley, an Arkansas corporation engaged in the automobile business in Greenville, Mississippi. The business was actually conducted by Black's two sons, with such advice and assistance as Black was able to provide during visits that he made on about every Thursday.

In 1965 Black went to the appellant's branch bank at Greenville and applied for a line of credit for River Valley. The bank, after checking Black's financial statement, agreed to provide River Valley with credit to the amount of $6,000, the debt being evidenced by a note signed by River Valley and endorsed by Black. On December 22, 1966, Black paid $1,000 to the bank and obtained a $5,000 renewal note due March 22, 1967, which is the note now in litigation.

For more than a year the bank had been honoring drafts drawn by River Valley on Dr. Black and presented to him at Monticello. In February of 1967 there was an accumulation of about $24,000 of such drafts for which the bank had given credit to River Valley but

which had not been paid by Black. The bank was concerned about the debt and demanded security.

On March 2, 1967—twenty days before the maturity of the $5,000 renewal note—River Valley executed in Greenville a deed of trust encumbering land in Mississippi to secure River Valley's $21,000 note to the bank. The deed of trust recited that it secured not only the $21,000 note but also "any additional indebtedness heretofore, now, or hereafter contracted with the [bank] by the grantors . . . whether such indebtedness be represented by promissory notes, open account, over-draft or otherwise."

River Valley's financial condition worsened to such an extent that the bank directed the trustee in its deed of trust to bring an out-of-court foreclosure proceeding in Greenville under the power of sale. As we have indicated, the bank purchased the property for $21,000, applied its bid upon the note for $21,000, plus interest, and brought this suit against Black and River Valley upon the $5,000 note.

The bank makes three contentions for reversal. First, it insists that its motion for summary judgment should have been granted in the circuit court (to which the case was transferred briefly before being returned to chancery). We need not discuss that contention, because the denial of the motion for summary judgment was followed by a trial on the merits. The denial of the motion is therefore not reviewable. *American Physicians Ins. Co.* v. *Hruska,* 244 Ark. 1176, 428 S. W. 2d 622 (1968).

Secondly, the bank contends that the chancellor erred in applying the law of Mississippi as a basis for holding that the $5,000 note was secured by the deed of trust under the pre-existing indebtedness clause that we have quoted. *Coombs* v. *Wilson,* 142 Miss. 502, 107 So. 874 (1926). Under Arkansas law that clause did not de-

scribe the $5,000 note with sufficient definiteness to bring it within the coverage of the deed of trust. *Bank of Searcy* v. *Kroh,* 195 Ark. 785, 114 S. W. 2d 26 (1938). The bank now insists that the Arkansas law should have been followed, because the appellees failed to give the written notice required by § 4 of the Uniform Interstate and International Procedure Act: "A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this State shall give notice in his pleadings or other reasonable written notice." Ark. Stat. Ann. § 27-2504 (Supp. 1967).

We have considered that statute in two earlier cases. In the *Hruska* case, *supra,* the plaintiffs relied upon the law of Missouri in their pleadings, but the defendant failed to plead its contention that the law of Louisiana was controlling. We held that in that situation the trial court correctly submitted the case to the jury under Missouri law. In the other case, *American Aviation* v. *Aviation Ins. Managers,* 244 Ark. 829, 427 S. W. 2d 544 (1968), we cited the statute in a footnote, without discussion, in holding the Arkansas law to be applicable.

Neither of those cases laid down a rigid rule requiring a party to assert his reliance upon foreign law at any particular point in the litigation. In fact, such an interpretation would not be in harmony with the purpose of the Uniform Act, which was to make it easier —not harder—for a party to rely upon the law of another jurisdiction. The Commissioners point out in their note to § 3 of the Act that it is intended to change the rule prevailing in many states, that a court may not even consider foreign law unless it has been pleaded. The statute substitutes a rule of reasonable notice only. On this point the Commissioners went on to say: "Any reasonable written notice will suffice. . . The court must exercise discretion in determining the proper timing of the notice in the light of the requirements of the case and fairness to the parties. The section does not attempt to prohibit the raising of an issue of foreign law after

any particular point in the litigation. In exceptional situations, the issues may not become apparent until during or even after the trial, and, in appropriate cases, the notice may be given at that time." 9B U. L. A. 329 (1966).

In the case at bar we find that reasonable notice was given. In this court counsel for both sides state that the case was submitted to the chancellor on trial briefs. Indeed, the appellees' brief here asserts without contradiction that the chancellor requested briefs on the law of Mississippi. Such briefs were manifestly submitted, because the chancellor's written findings discussed the Mississippi cases at length and rested the court's conclusions upon the law of that State. Those findings were filed in the clerk's office on November 5, 1968. A decree pursuant to those findings was prepared by counsel for the prevailing side, approved by opposing counsel, and entered by the court on November 26. Thus the bank had a period of three weeks after the chancellor's announcement of his findings to assert any claim it might have had that the debtors' failure to give written notice of their reliance upon the law of Mississippi had unfairly taken the bank by surprise. No such claim was asserted, doubtless because it was understood by all concerned that a note and deed of trust executed in Mississippi, payable in Mississippi, and secured by land in Mississippi, would be governed by the law of that State. To sustain the appellant's present argument would allow it to raise the issue for the first time on appeal.

Finally, the bank argues that the chancellor should not have applied the bank's bid pro rata to both notes. It is said that inasmuch as the debtors did not direct the application of the bid the creditor was entitled to apply it as the creditor saw fit. Under Mississippi law, however, proration is the proper procedure when the payment is an involuntary one resulting from a foreclosure rather than a voluntary one made at the debtor's free will. *Cage* v. *Iler*, 13 Miss. 410, 43 Am. Dec. 521

(1845). Nor do we find merit in the appellant's insistence that the appellees waived their right to proration by their failure to plead it. The matter was covered by the proof, was presumably argued in the trial briefs, and was explicitly discussed by the chancellor in his findings. Absent any plea of surprise—and no such plea was made—the court could properly treat the pleadings as amended to conform to the proof. *Nance* v. *Eiland,* 213 Ark. 1019, 214 S. W. 2d 217 (1948).

Affirmed.