FINDLEY MACHINERY COMPANY *v.* Charlie MILLER
d/b/a MILLER ENTERPRISES REALTY

CA 81-151                                          625 S.W. 2d 542

Court of Appeals of Arkansas
Opinion delivered December 16, 1981

*Thomas & Nussbaum, P.A.,* by: *Thorp Thomas,* for appellant.

*Sam E. Gibson, P.A.,* by: *Sam E. Gibson,* for appellee.

MELVIN MAYFIELD, Chief Judge. The appellant filed a complaint in circuit court alleging it was the owner and entitled to immediate possession of a described bulldozer; that the appellee had possession of the machine and unlawfully detained it; and that appellant should have judgment for possession of the property and damages for its detention. An affidavit to obtain delivery was filed, order for delivery was issued, replevin bond was posted, and the sheriff took possession of the bulldozer and turned it over to the appellant.

An answer and counterclaim was filed by appellee and subsequently the case came on for trial. In chambers, on the day set for trial, the appellee made an oral motion asking the court to rule that a written contract attached to some requests for admission be declared an agreement for sale and purchase. After some slight discussion during which appellant's counsel stated the agreement was a lease and that appellee had used the equipment for several months without making any payment, the court said:

> The court is going to rule then that the contract which is attached to plaintiff's Request for Admissions, by the plain terms on its face, is a contract for the purchase of the equipment and not a lease agreement.

Counsel for appellee then made an oral motion to dismiss the complaint for failure to state a cause of action. After a very short discussion the court granted that motion, continued the trial on appellee's counterclaim, dismissed the prospective jurors, and adjourned court.

We are not aware of the procedural authority under which the court was operating but relying upon the case of *Griffin* v. *Monsanto Co.,* 240 Ark. 420, 400 S.W. 2d 492 (1966)

we treat the oral motion made in chambers as a motion for summary judgment. However, as the court said in *Griffin*, a motion for summary judgment cannot be used to submit a disputed question of fact to the judge. Our summary judgment procedure, Rule 56, A. R. Civ. P., does provide that when the motion is heard and judgment is not rendered upon the whole case and a trial is necessary, the court:

> [S]hall, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy . . . . Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

But in the instant case, we think it was error for the court to hold either as a matter of fact or law, that the contract was one of purchase and not a lease agreement.

This situation was involved in the case of *Bell* v. *Itek Leasing Corporation*, 262 Ark. 22, 555 S.W. 2d 1 (1977), where the Arkansas Supreme Court held that a contract which purported to be a lease of printing equipment was in fact a financing arrangement for a sales contract and void for usury. In reversing the chancery court's decision the Supreme Court said "the overwhelming preponderance of the evidence" shows the purported lease to have been in fact a credit sale. In that case the court discussed five factors established by the proof and which required a finding that the transaction was a sale on credit. Only one of those factors is present here. That is a provision which the court in *Bell* said "puts all the risk upon the lessee [who] must pay the taxes and insurance upon the leased property and incurs, in the most detailed language, every risk of loss or damage to the leased property." Here the contract says the lessor assumes no liability for breakdowns due to defective material or mechanical troubles but there is no requirement for the lessee to insure the property or pay taxes on it and the lessee certainly does not incur "in the most detailed language, every risk of loss or damage to the leased property."

There is a paragraph in the printed form used in this case that gives the lessee the option to purchase the rented equipment. If effective, the option could be exercised without paying any additional consideration. This results from the fact that there is no price set out other than the total rental price. However, the paragraph which gives the lessee the option to purchase says it applies if the lessor's signature "appears in the margin opposite this paragraph" and there is no such signature on the copy in the record. But in *Standard Leasing Corporation v. Schmidt Aviation*, 264 Ark. 851, 576 S.W. 2d 181 (1979), the opinion says, "In *Bell* the lease was silent with regard to the purchase of the property at the expiration of the lease, but there was oral testimony that it could be bought for 10% of the price." And although the lease in *Standard Leasing* recited there was no option to purchase, the court held parol evidence admissible to show that the property could be bought at the end of the lease for 10% of the price. So, while the contract in the case at bar actually appears to be a lease we do not think, on the record before us, that it was a question to be determined by summary judgment.

Even if the contract were a sales contract and not a lease agreement the complaint filed by appellant should not have been dismissed. From the brief discussion between court and counsel that is in the record it is not clear why the complaint was dismissed. There was some reference to the term "financing statement." There is, of course, a distinction between the attachment of a security interest and its perfection. Section 9-203 of the Commercial Code, Ark. Stat. Ann. § 85-9-203 (Supp. 1981), provides that a security interest will *attach* and be enforceable when the debtor signs a security agreement which contains a description of the collateral, value has been given, and the debtor has rights in the collateral. A security interest is *perfected* when a financing statement is properly filed, Ark. Stat. Ann. §§ 85-9-302, 85-9-401, and 85-9-402. The filing of the financing statement affords notice and affects priorities in claims against the collateral, but the statement does not have to be filed for the security interest to *attach* and *be enforceable* between the parties. See *General Electric Credit Corp. v. Bankers Commercial Corp.*, 244 Ark. 984, 429 S.W. 2d 60 (1968). Here,

there are no third party claims and as between the parties the contract was either a lease or a financing arrangement for a sales contract.

Ark. Stat. Ann. § 85-1-201 (37) says:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation . . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become, or has the option to become, the owner of the property for no additional consideration or for a nominal consideration *does make the lease one intended for security.* (Our emphasis.)

Thus, if the contract in this case is a sales contract and not a lease, it is because it is cast in the form of a lease with provisions that give the lessor a security interest in the bulldozer and allow the lessee to own the equipment when the rental has been paid. In that event, it clearly would be improper to dismiss the appellant's complaint. *In re Shell,* 390 F. Supp. 273 (W.D. Ark. 1975). See also the discussion of this issue in White & Summers, *Uniform Commercial Code,* § 22-3 (2d ed. 1980), which section also discusses factors involved in determining whether an instrument is a lease or secured sales contract.

There is some discussion in the record of the duty of a repossessing seller to dispose of the property in a commercially reasonable manner and the effect of his failure to do so. If it is an issue, the law in that regard was discussed in *Mayhew* v. *Loveless,* 1 Ark. App. 69, 613 S.W. 2d 118 (1981) and we need not reiterate it here.

The judgment appealed from is reversed and the cause is remanded for proceedings in keeping with this opinion.