GARRISON MOTOR FREIGHT, INC. *v.* David E. HAMMONS, d/b/a TRIANGLE LEASING COMPANY

81-198                                    628 S.W. 2d 567

Supreme Court of Arkansas
Opinion delivered March 8, 1982

*Rex M. Terry,* of *Hardin, Jesson & Dawson,* for appellant.

*Lawrence W. Fitting,* of *Gean, Gean & Gean,* for appellee.

GEORGE ROSE SMITH, Justice. The Court of Appeals properly transferred this usury case to us. Rule 29 (1) (*1*). The contract in issue, a three-year lease of an accounting machine, is in many respects similar to the ostensible leases found to be usurious in *Standard Leasing Corp.* v. *Schmidt Aviation,* 264 Ark. 851, 576 S.W. 2d 181 (1979), and *Bell* v. *Itek Leasing Corp.,* 262 Ark. 22, 555 S.W. 2d 1 (1977). The circuit court, however, sitting without a jury, upheld this contract on the ground that the appellee Hammons was in the leasing business and that an intent to charge usury will not be presumed when the opposite result can reasonably be reached. We affirm the trial judge's decision, not on the basis of a presumption but because on the facts his conclusion is not clearly against the weight of the evidence. Rule 52, A. R. Civ. P.

When the contract was made in 1975 (before *Itek* was decided), Hammons was the majority stockholder in Fort Smith Cash Register Company, a corporation, and also operated Triangle Leasing Company as an individual proprietorship. When a person desiring to buy a cash register or similar machine from the corporation could not pay cash, Hammons had the needed forms for handling the transaction as a lease. The corporation first sold the machine to Triangle, which then leased it. The form of lease was similar to those in *Schmidt* and *Itek* in that most of the risk was on the lessee, the remedies on default were those

available to a conditional seller, a financing statement was executed in which the lessee was shown as the debtor, and at the expiration of the lease the lessee had an option to purchase the property for not more than 10% of the original price, plus options to surrender the machine or to continue to lease it on a year-to-year basis by paying one monthly payment per year.

There is, however, at least one significant, substantial difference between this case and the earlier two. The cash price of the machine in this case, which was rebuilt especially for the purchaser's requirements, would have been $4,300, plus sales tax. Hammons testified that if the machine had been sold by the corporation for cash, the buyer would have been required to pay an additional $300 for an optional six-months maintenance contract, $200 for the installation of the machine, and $600 for the training of the purchaser's employees in its operation. The appellant argues that those three added items were merely part of the cash price, but we do not so construe Hammons' testimony. He testified that he trained this purchaser's employees in the use of the machine. Since the six-months maintenance contract was optional, it could hardly have been part of the basic cash price. And certainly the machine was installed, though the record does not show by whom.

The appellant, having pleaded the defense of usury, had the burden of proving that the transaction was usurious. *Temple* v. *Hamilton*, 178 Ark. 355, 11 S.W. 2d 465 (1928). The appellant offered no testimony about the original transaction and did not cross-examine Hammons in detail about the three extra services. If the prospective buyer was unable to pay the entire purchase price and the cost of the services in cash, it would not be a sham as a matter of law for Triangle Leasing to buy the machine from the corporation and lease it to the purchaser at a sufficient monthly rental to include the services to be provided by Hammons's two related companies. The trial court was justified in finding that the defendant's burden of proof had not been met. It is undisputed that the agreement did not entail as much as 10% interest if the $1,100 total for the three extra services were added to the cash price as principal. We cannot say that the

trial court's resolution of a disputed issue of fact is clearly erroneous.

Affirmed.