### In re Thomas and Alma BROWN, Debtors.

### Bankruptcy No. HS 86–174 F.

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

June 3, 1987.

David Switzer, Hot Springs, Ark., for Kiernan, Inc. d/b/a Curtis Mathes.

Jack Dickerson, Hot Springs, Ark., for debtors, Thomas and Alma Brown.

A.L. Tenney, Little Rock, Ark., Trustee, pro se.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Before the Court is the Objection to Confirmation of the chapter 13 plan of debtors, Thomas and Alma Brown, filed by Kiernan, Inc. d/b/a Curtis Mathes (Curtis Mathes) on October 22, 1986. An evidentiary hearing was scheduled for March 5, 1987. At that time, the parties agreed to submit stipulations of facts and citations of pertinent legal authorities to the Court regarding the following issue: whether the agreement between the debtors and Curtis Mathes constitutes a lease agreement or a conditional sales contract.

Because this matter concerns confirmation of a chapter 13 plan, the matter is a core proceeding pursuant to 28 U.S.C. § 157(b) about which the Court may make findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. From the evidence, including the pleadings and stipulations of facts filed by the parties, the Court hereby makes the following findings of fact and conclusions of law.

### Findings of Fact

On April 7, 1987 the parties filed the following stipulations of facts, which the Court adopts.

This matter comes before the Court on an objection to confirmation filed by the creditor, Kiernan, Inc. d/b/a Curtis Mathes. The debtors entered into a contractual agreement with this creditor on October 23, 1985. A copy of the contract stating the terms of that agreement is attached.

Both parties substantially performed all obligations listed in the agreement until the filing of the debtors' chapter 13 petition on July 31, 1986. From that time, the debtors ceased making payments on the contract upon the advice of their counsel.

The debtors listed the debt to Curtis Mathes as secured by a television set and have proposed to pay the debt in full along with any interest allowed under the Bankruptcy Code.

The debtors contend the agreement is a sales agreement. The creditor contends that the agreement is in fact a lease and objects to confirmation of the plan.

In addition to the stipulations of fact filed by the parties, the Court makes the following findings of fact.

1. The October 23, 1985 Agreement between Thomas and Alma Brown, the debtors, and Kiernan, Inc. d/b/a Curtis Mathes concerning a television set entitled "Lease Agreement and Consumer Lease Disclosure Statement" contains the following pertinent provisions:

3. TOTAL PAYMENT DUE AT START OF LEASE:

| | | |
|---|---|---|
| One (weekly) advance payment | ($200.00) Downpayment | $200.00 |
| Delivery Charge | | $ None |

4. TERM OF THIS LEASE: 18 mo.; But See Item 12 below for your right of early termination.

The first mo. payment of $35.00 is due on 11/23/85 and 17 subsequent mo. payments of $35.00 are due on the 23rd of each mo. thereafter.

Each wk. payment includes $1.40 for sales tax.

5.  TOTAL MONTHLY PAYMENT: $ 35.00

. . . .

7.  TOTAL OF OTHER CHARGES PAYABLE TO LESSOR:

Pick up and refurbishing charge of -0- payable ONLY if you terminate before paying N/A rent. (See Item 12, below) $ 0.00

8.  FEES AND TAXES (OTHER THAN SALES TAX):

Total amount you will pay during the term for official fees and taxes. $ None

9.  INSURANCE:

You (Lessee) are not required to provide or pay for any insurance. We (Lessor) do not provide for any insurance.

Total premium cost: $ None

10.  MAINTENANCE:

You are responsible for the following maintenance of leased property:

A.  to protect the leased property from any loss, theft or destruction from any and all causes whatever (reasonable, ordinary wear and tear excepted), and in the event of such loss, theft or destruction, to pay us the fair market value of the property.

B.  to pay us a reasonable cost of repair of the leased property in the event of damage and/or partial destruction from any cause whatever.

We are responsible for the following maintenance of the leased property:

We will maintain the leased property, during the term of the Lease and during the term of any note given under Item 14 below, in good working order providing all parts and labor. We will not be responsible for repairs made by others.

11.  WARRANTIES: The leased property is subject to the following express warranty:

If the unit is new, it carries a 4–Year Limited Warranty given by Curtis Mathes Corporation (for electronic parts). If the unit is not new, it carries the unexpired portion of the 4–yr. Limited Warranty which is 48 months. And see our agreement in item 10 above, to maintain the leased property.

12.  EARLY TERMINATION AND DEFAULT:

a.  You may terminate this Lease before the end of the lease term under the following conditions: At any time upon notice to us and we will pick up the leased property. The charge for such early termination is that you must pay all lease payments and collection charges, if any, due prior to notice of termination. However, in the event you have made less than N/A lease payments, you must pay an additional $0.00 pick up and refurbishing charge.

b.  We may terminate this Lease under the following conditions: If you fail to make the mo./wk. payments on time; or move the leased property without our permission from any location where you agreed to keep it; or the leased property is moved outside the municipality of Garland County, Ar.

Upon termination, we shall be entitled to the following charges:

All mo./wk. lease payments due prior to the date of termination plus accrued collection charges, if any. You also agree we may peacefully repossess the leased property upon termination and that you will cooperate in granting us entrance to your premises to allow repossession.

13.  COLLECTION CHARGE:

If you do not make a payment when due and we send a person to you to collect the past due payment you will be charged an extra $10.00 for that collection.

14.  OPTION TO PURCHASE:

You have an option to purchase the leased property at the following time: At any time during the 18th mo. of this Lease provided you have made all required payments. The

price will be $201.60 plus $8.40 sales tax for a total of $210.00. You may pay in cash or by executing a promissory note for the total amount, payable in 6 equal mo. installments of $35.00. No Finance charge is added.

15. WARRANTY IF YOU ELECT TO PURCHASE: If you elect to purchase, you will receive the balance of the warranty coverage provided under the 4-Year Limited Warranty from Curtis Mathes Corporation as shown in paragraph 11, less the number of months you have had the property on lease.

### OTHER TERMS AND CONDITIONS OF THIS LEASE

16. Ownership of the Leased Property: We (Lessor) are the owner of the leased property, and the title, during the term of the Lease, shall always remain with us.

17. Location of the Leased Property: You (Lessee) will keep and use the leased property only at your address as shown in item 1 above. You agreed that the leased property will not be moved from that address without getting our written permission in advance for a move. We will move it for you.

18. Right of Assignment: You have no right to sell, transfer, assign, sublease or in any way encumber the leased property. We retain the right to sell, transfer, assign or encumber our interest in this Lease Agreement and the leased property.

---

2. On July 31, 1986, the debtors, filed chapter 13 bankruptcy proceedings. On August 10, 1986, the debtors filed schedules and statements of financial affairs and proposed a plan of reorganization.

3. In their schedules, statements and plan, the debtors listed the debt owed to Curtis Mathes as secured by the television set. The debtors state that the claim of Curtis Mathes is $590.00 and that the property securing the debt is valued at $700.00. The debtors propose to make monthly payments of $12.00 through their 48 month plan to Curtis Mathes.

4. Curtis Mathes filed an objection to the confirmation of the debtors' proposed plan on October 22, 1986 contending that the plan had not been proposed in good faith; that the debt owed by the debtors to Curtis Mathes was a result of a lease agreement which the debtors had not accepted or rejected and was not a secured debt; and further, that the debtors were in default in their lease payments at the time the bankruptcy was filed.

### Position of Parties

Curtis Mathes contends that the agreements are leases which the debtors must accept or reject. The debtors contend that the agreements are conditional sales contracts and that Curtis Mathes is a secured creditor.

### Conclusions of Law

Although the agreements are silent, this Court finds that the agreements are governed by Arkansas law. *Edwin F. Armstrong & Co. v. Ben Pearson, Inc.*, 294 F.Supp. 163 (E.D.Ark.1967), *aff'd*, 404 F.2d 610 (8th Cir.1968). The agreements were executed in Arkansas by the debtor who is an Arkansas resident and Kiernan, Inc. d/b/a Curtis Mathes, an Arkansas corporation.

An agreement phrased in lease terminology may actually be an agreement intended as security. "Whether a lease is intended as security depends upon the facts of each case...." Ark.Stat.Ann. § 85-1-201(37). Arkansas courts have scrutinized the facts of each case closely to insure that a purported lease is not a secured transaction and have enunciated certain factors which distinguish a lease from a secured transaction. These factors include:

(1) whether the financing agent is also a manufacturer or dealer. *Bell v. Itek Leasing Corp.*, 262 Ark. 22, 555 S.W. 2d 1 (1977); *McIlroy Bank & Trust v. Seven Day Builders*, 1 Ark.App. 121, 613 S.W.2d 837 (Ark.App.1981).

(2) whether a down payment is required. *Standard Leasing Corp. v. Schmidt Aviation,* 264 Ark. 851, 576 S.W.2d 181 (1979); *McIlroy Bank & Trust v. Seven Day Builders, supra.*

(3) whether the lessee must bear the risk of loss. *Standard Leasing Corp v. Schmidt Aviation, supra; Bell v. Itek Leasing Corp., supra; McIlroy Bank & Trust v. Seven Day Builders, supra.*

(4) whether the lessee has an option to purchase at the end of the lease term, and if so, whether the purchase may be for little or no additional consideration. *Bell v. Itek Leasing Corp., supra;* Ark.Stat.Ann. § 85–1–201 (37).[1]

(5) whether the lessor, upon the lessee's default under the lease, has a right to declare all lease payments due and payable (similar to a mortgagee's foreclosure rights). *Standard Leasing Corp. v. Schmidt Aviation, supra; Bell v. Itek Leasing Corp., supra; McIlroy Bank & Trust v. Seven Day Builders, supra.*

(6) whether the lessee must pay sales taxes. *Standard Leasing Corp. v. Schmidt Aviation, supra.*

(7) whether financing statements or additional security instruments are completed regarding the transaction. *Bell v. Itek Leasing Corp, supra.*

(8) whether a sales price for the purchase was established at the outset of the lease. *McIlroy Bank & Trust v. Seven Day Builders, supra.*

The leading case in Arkansas regarding whether a lease is intended to be a security agreement is *Bell v. Itek Leasing Corp.,* 262 Ark. 22, 555 S.W.2d 1 (1977). In *Bell,* the Arkansas Supreme Court found a purported lease agreement to be a usurious conditional sales contract, and relied upon five important points. First, the defendant, Itek Leasing Corp., was a finance company, not a manufacturer. Second, under the lease, all risks were placed on the lessee; the lessee had to pay taxes, insurance and was liable for any loss or damage incurred. Third, the contract provided for the same remedies upon the lessee's default as would be seen under a mortgage; the lessor could declare all unpaid rental payments immediately due, repossess and sell the property and hold the lessee personally liable for any deficiency. Fourth, the contract provided that the lessee, would, at lessor's request, join in the execution of financing statements and other documents necessary for protection of the equipment under the Uniform Commercial Code, which in a true lease situation would not be necessary. Fifth, although the contract did not specify, the supreme court found that according to Itek Leasing's agent, the lessee would have had an option to purchase the equipment for only a nominal consideration (10%) at the end of the lease term suggesting a sale rather than a lease. *Bell,* 262 Ark. at 24, 555 S.W.2d at 2–3.

In *Standard Leasing Corp. v. Schmidt Aviation,* 264 Ark. 851, 576 S.W.2d 181 (1979), the Arkansas Supreme Court again found that a purported equipment lease to be a usurious conditional sales contract. The court found that the contract price included sales tax, an item usually not found in a lease. Further, the lease provided for a down payment consisting of the first and last payments at the outset of the lease. All risks were placed on the lessee. Upon the lessee's default, the lessor had the right to accelerate unpaid lease amounts. A financing statement was authorized. The supreme court found that although the agreement in *Standard Leasing* stated that the lessee had no option to purchase at the expiration of the lease term, trial testimony suggested that often the lessees became owners of the equipment at the expiration of the lease term.

---

**1.** Ark.Stat.Ann. § 85–1–201(37)(a) and (b) (Supp.1985) state that the "inclusion of an option to purchase does not of itself make the lease one intended for security, and ... an agreement that upon compliance with the terms of the lease, the lessee shall become, or has the option to become, the owner of the property for no additional consideration or for a nominal consideration does not make the lease one intended for security."

*Standard Leasing,* 264 Ark. at 854, 576 S.W.2d at 183.

In *McIlroy Bank & Trust v. Seven Day Builders,* 1 Ark.App. 121, 613 S.W.2d 837 (1981), the Arkansas Court of Appeals, relying on *Bell v. Itek Leasing Corp., supra,* found a bank's lease contract to be a credit sale. In *McIlroy,* the bank was engaged in financing, not manufacturing or leasing. Rent was to be paid by the lessee without abatement for any reason. The lessee was required to pay taxes and insurance and assume all risks of loss. Upon the lessee's default, the lessor could declare all remaining unpaid payments under the lease due and obtain a deficiency judgment even if the equipment was repossessed, relet or resold. The court of appeals determined that rental amounts which were to be paid in advance had the effect of a down payment. Further, the Court found that the contract provision stating that the lessee had an option to purchase at the end of the lease term for a "price equal to fair market value" which was set at the outset of the lease and for which the "anticipated value would be $7,500.00," 10% of the original purchase price, supported a finding of a sales contract rather than a lease.

The Eighth Circuit Court of Appeals recently addressed the issue of whether an agreement constitutes a lease or conditional sales contract. In *Carlson v. Tandy Computer Leasing,* 803 F.2d 391 (8th Cir. 1986), the Court of Appeals found an agreement, under Missouri law, was a pure lease, and not intended as security and allowed the creditor, to repossess equipment over a bankruptcy trustee's claims. To reach this conclusion, the Court examined several factors, including the fact that 85% of the equipment was ultimately sold to lessees; that the lease was for 40 months and the leased equipment became obsolete in three years; the total sum of lease payments far exceeded the original value of the equipment; that the lessee assumed many of the incidents of ownership, including risk of loss, insurance and taxes; that the lessor upon default had the right to accelerate all future payments. In spite of these factors, however, the Court of Appeals found that the intent of the parties as expressed in the written document was to create nothing more than a lessor-lessee relationship. The document consistently used "lease language" and of paramount importance, a clause in the document provided that the agreement was only a lease and the lessor retained title to the property. *Carlson,* 803 F.2d at 395. Further, the Court emphasized that the lessee had no duty or option to purchase the equipment at the expiration of the lease term, and under the agreement was required to return the equipment. *Id.* After examining the parties' specific intent, the Court concluded that the agreement was a pure lease and not a secured transaction.

In applying the factors established in the above cases, this Court concludes in the present case that the agreement at issue is not a lease, but a conditional sales contract and a secured transaction. First, the agreement provides for a down payment in the amount of $200.00 at the start of the "lease." Second, the weekly payments include sales tax of approximately four percent, the current Arkansas sales tax rate. Third, all risk of loss falls upon the "lessee." Although the "lessee" is not required to insure the property, no insurance is provided by Curtis Mathes and in the event the property is destroyed, damaged or stolen, the "lessee" is liable for the fair market value. Fourth, the "lessee" is expressly provided an option to purchase which can be exercised only at a specific time. Fifth, in the lease, the purchase price for the option was established at the outset, which precludes consideration of the actual fair market value of the television at the end of the term.

The Court recognizes that the agreement does contain provisions which would indicate a lease. If the "lessee" wishes to terminate the agreements prior to exercising the option to purchase, the "lessee" is not responsible for payments after the date of termination. Although the agreement does state that the "lessor" owns the property, the agreement does not state that the parties *intend* the agreement to be a lease, as relied upon in *Carlson v. Tandy Computer Leasing,* 803 F.2d at 395. Further,

the "lessee" is not required to return the property at the expiration of the "lease term" as in *Carlson. Id.* at 396.

Even though the agreement does contain some characteristics of a lease, the Court is persuaded that the agreement is actually conditional sales contract. Arkansas courts have taken a strict view in determining whether a purported lease is actually a conditional sales contract and intended for security. This Court, in viewing the agreement, is also required to take a strict view. *See Standard Leasing Corp. v. Schmidt,* 264 Ark. at 855, 576 S.W.2d at 183.

Because the agreement is determined to be a conditional sales contract, Curtis Mathes is a secured creditor which may be treated under the plan pursuant to the provisions of the United States Bankruptcy Code.

IT IS SO ORDERED.

### ORDER

Based on the Memorandum Opinion of even date, the Court finds that the agreement between the debtors, Thomas and Alma Brown, and Kiernan, Inc. d/b/a Curtis Mathes is not a lease but a conditional sales contract and Curtis Mathes is a secured creditor.

The Court further finds that the Objection to Confirmation filed by Kiernan, Inc. d/b/a Curtis Mathes is overruled.

IT IS SO ORDERED.