**In re Mattie GLENN.**

**DELSAM, INC., d/b/a Rent–A–Center, Movant,**

**v.**

**Mattie GLENN and A.L. Tenney, Trustee, Respondents.**

**Bankruptcy No. BA 89–80 S.**

United States Bankruptcy Court, E.D. Arkansas, Batesville Division.

July 13, 1989.

---

David Clark, Batesville, Ark., for debtor.

James Lawson, No. Little Rock, Ark., for Rent–A–Center.

A.L. Tenney, No. Little Rock, Ark., Trustee.

## ORDER

MARY D. SCOTT, Bankruptcy Judge.

The matters before the Court are a Motion for Relief from Stay and Objection to Confirmation of Plan filed by Rent–A–Center in this Chapter 13 case. A hearing was held June 29, 1989. The debtor appeared by counsel, David Clark, Esq. Rent–A–Center appeared by counsel, James Lawson, Esq.

The Court has jurisdiction over the case pursuant to 28 U.S.C. § 1334. Moreover, the Court finds that it is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified in 28 U.S.C. § 157(b)(2)(K) and (M).

The creditor asserts that the debtor leased from it a color console television set and video cassette recorder March 11, 1989.

The debtor filed a Chapter 13 bankruptcy petition May 1, 1989, but this creditor contends that the plan does not provide for assumption or rejection of the lease and curing of the past due payments. Rent–A–Center asks for relief from the automatic stay. Rent–A–Center also objects to confirmation of the Chapter 13 plan "for the same reasons it seeks relief from the automatic stay."

The debtor asserts that he is purchasing the television and recorder and his plan provides full payment to Rent–A–Center over the life of the plan.

The parties are in agreement that a determination of the issue of whether the contract between the debtor and the creditor is a lease or a conditional sale by the Court will be determinative of the Motion and Objection filed by Rent–A–Center. The parties stipulated to the introduction of the contract between the parties.

The contract between the parties is captioned "Rental Purchase Agreement." The following clause appears prominently:

You, the undersigned Renter(s), are renting from Rent–A–Center, Owner, the property described above at the rental rate shown. As used in this Agreement, "you" and "your" mean the person(s) signing this Agreement as Renter; "we", "us" and "our" mean Rent–A–Center; "Agreement" means this rental-purchase agreement; and "property" means the rented property described above. The conditions of this rental-purchase agreement are set out herein.

The following relevant provisions are set out in the agreement:

(1) *Renewal Payments:* The initial term of this Agreement is one week. You are not obligated to renew this Agreement beyond the initial term. However, you may renew this Agreement beyond the initial term by making an advance rental payment on Saturday of each week for successive weekly terms, or you may renew for monthly terms on the 11th day of each month, as you choose.

(2) *Termination:* You are not obligated to renew this Agreement and may terminate it at the end of any weekly or

monthly rental period. To do so you must make arrangements to return the property and make all rental payments due through the date of return. If you do not renew this Agreement on or before the due date (or if you breach any other important term of this Agreement), this Agreement will automatically terminate but you will remain liable for the weekly or monthly rental charges (prorated and accrued daily) for the property until it is returned. The property must be returned to us in its present condition, fair wear and tear accepted.

(3) *Other Charges:* Reinstatement Fee. If you fail to make a rental renewal payment by the due date, this Agreement automatically terminates, and we are entitled to return of the property; PROVIDED, at our option, *you may reinstate this Agreement within two (2) business days if you are renting the property on a weekly basis, or within five (5) business days if you are renting on a monthly basis, by paying all missed rental renewal payments, plus a reinstatement fee of $5.00.* You must return the property to us during the reinstatement period if we ask you to do so. If you return the property as requested during the reinstatement period, you will have the right to reinstate the Agreement for thirty (30) days, without losing any rights or options previously acquired under this Agreement. Upon reinstatement, we will provide you with the same property you are presently renting, or substitute property of comparable condition and quality.

4. *Ownership:*

A. We own the property described herein. You do not own property; and will not acquire any ownership rights therein unless you have, at your option, complied with the ownership terms of this Agreement.

B. If you renew this agreement for 78 successive weeks, you will pay a total of $1,481.22, or if you renew this Agreement for 18 successive months, you will pay a total of $1,367.28, and will own the property.

5. *Our Right to Take Possession:* If you do not renew this Agreement in a timely manner, we have the right to take possession of the property. If you do not return the property or make it available to us, you will be required to pay our costs for taking possession of and removing the property, including to the extent permitted by law, court costs and attorneys' fees.

6. *Liability:* You will be liable for damage in excess of normal wear and tear, loss or destruction of the property by any cause, including but not limited to theft and vandalism. You must pay us the fair market value of the property if, for any reason, you fail to return it to us when this Agreement ends. In no event will this amount exceed the total you would pay to own the property set out in paragraph 4B above.

7. *Forbidden Acts:* You may not pawn, sell or otherwise dispose of the property. If you do, this Agreement is terminated, and you are liable for the fair market value of the property. In no event will this amount exceed the total you would pay to own the property as set out in paragraph 4B above.

8. *Location of Property:* You agree you will keep the property in your possession at your residence address shown above, and will not move the property from that address without our written consent. If you move the property without our written consent, you have breached this Agreement and we will have the immediate right to possession of the property.

9. *Warranty:* A manufacturer's warranty on the property rented under this Agreement will be passed on to you if you acquire ownership of the property and the warranty is still in effect and allows us to give it to you. There are no express warranties other than our agreement to maintain the property in good working order during the terms of this Agreement.

10. *Title and Maintenance:* We retain title to the property at all times, and will maintain it in good working order. Our obligation to maintain the property shall

continue for the initial rental term, and any renewal terms. We will not be responsible for costs or results of any repairs done by others.

Lastly, the Court notes at the bottom of the one page contract between the parties that the agreement was signed on a Rent–A–Center store form for Arkansas. Although it is not stated on the form and not specifically addressed by the parties, the Court assumes Arkansas law will be determinative of the issue before the Court.

Rent–A–Center presented testimony that it paid personal property taxes on the goods and that no financing statement or security agreement were signed. On cross-examination Rent–A–Center revealed that sales tax is charged on transactions of this type.

The Bankruptcy Code does not define "lease." *In re Niemi,* 27 B.R. 215, 217 (Bkrtcy.D.Or.1982). A number of courts have held that the determination of whether a contract is a lease or an installment sales contract involves essentially a determination of the parties' true intent at the time of the contract's formation. *In re Yost,* 54 B.R. 818 (Bkrtcy.W.D.Ky.1985); *In re Cook,* 52 B.R. 558 (Bkrtcy.D.N.D. 1985). The court in *In re Air Vermont, Inc.,* 44 B.R. 440, 443 (Bkrtcy.D.Vt.1984) found that "To determine intent, the court looks to the contents of the documents and to the factual setting of the transaction . . . as well as the subsequent treatment of the agreement of the parties."

The leading Arkansas Supreme Court case most often cited which deals with the issue of whether a lease is a true lease or an installment sales contract is *Bell v. Itek Leasing Corp.,* 262 Ark. 22, 555 S.W.2d 1 (1977). See, also, in this regard, *Hill v. Bentco Leasing, Inc.,* 288 Ark. 623, 708 S.W.2d 608 (1986); *Hardman v. Dairy Farm Co.,* 12 Ark.App. 25, 670 S.W.2d 466 (1984); *McIlroy Bank & Trust v. Seven Day Builders,* 1 Ark.App. 121, 613 S.W.2d 837 (1981); *Findley Machinery Co. v. Miller,* 3 Ark.App. 264, 625 S.W.2d 542 (1981). In *Bell* the Arkansas Supreme Court cited several factors that should be considered in a determination of whether a contract constitutes a lease or installment sales contract.

The Arkansas Supreme Court, since the *Bell* case, has continued to review those factors outlined in that case in subsequent cases. A review of the most recent cases reveals that the Court just recently had occasion to consider, for the first time, the very question before this Court. *Crumley v. Berry,* 298 Ark. 112, 766 S.W.2d 7 (1989). The court at 113–14 stated pertinently:

When considering whether a particular agreement constitutes a lease or a sale, we look at a number of factors to determine the nature of the contract. See *Hill v. Bentco,* 288 Ark. 623, 708 S.W.2d 608 (1986); *Bell v. Itek,* 262 Ark. 22, 555 S.W.2d 1 (1977). The agreement in this case includes one particular factor that would strongly favor an interpretation of a sale: the option to buy the items at the end of a specified period of weeks for no additional cost, or in other words, the "absence of any appreciable residual in the lessor at the end of the lease." *Hill v. Bentco, supra.* This factor was significant in both *Hill v. Bentco, supra,* and *Bell v. Itek, supra.*

Still, as noted in *Hill,* all factors must be considered and looking further in this case, what is noticeably absent is any obligation on the part of the lessee to make payments equivalent to the purchase price of the items, an obligation present in both *Hill v. Bentco* and *Bell v. Itek.* Under the contract, Ms. Crumley was free to terminate the arrangement at the end of the first week, or any subsequent week. There was no obligation to continue payments for the specified periods. This course of action was completely optional with Ms. Crumley. Is such an obligation necessary to finding a contract for sale?

We have not previously considered this question, but from an examination of other jurisdictions and authorities, it appears that the greater weight of authority agrees that when the lessee has the right to terminate at any time and is under no obligation to make payments equivalent to the purchase price of the

leased goods, it will generally preclude a finding that the arrangement is a sale and not a lease.

See also, in this regard *Matter of Marhoefer Packing Co., Inc.,* 674 F.2d 1139, 1142–43 (7th Cir.1982) and *In re Armstrong,* 84 B.R. 94 (Bkrtcy.W.D.Texas 1988).

The instant case reveals essentially the same kind of contract outlined in the *Crumley* case. The debtor has no obligation to continue paying rent under the contract. The lease is terminable at will, with no strings attached. The lease in question must therefore stand as a true lease.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the Objection to Confirmation is sustained. It is further

ORDERED that the debtor shall have twenty (20) days to comply with the provisions of 11 U.S.C. § 365 and file a motion to either assume or reject the unexpired lease. It is further

ORDERED that the debtor within twenty (20) days of entry of this Order shall file a modification of the Chapter 13 plan to reflect the findings of the Court herein. It is further

ORDERED that the Motion for Relief from Stay is denied without prejudice and upon condition that the debtor comply with the provisions of the Bankruptcy Code as outlined above. It is further

ORDERED that should the debtor fail to comply with this Order as outlined above, the lease will be deemed rejected and Rent–A–Center will be granted relief from the automatic stay without further notice or hearing.

IT IS SO ORDERED.