The Honorable Mike Beebe State Senator 211 West Arch Searcy, AR 72143
Dear Senator Beebe:
This is in response to your request for an opinion on the following questions regarding a proposed method by which planning and development districts organized pursuant to A.C.A. 14-166-201 et seq. (1987) could assist cities and counties in purchasing equipment:
 1) Would it be permissible for the Planning/Economic Development Districts to become a party in lease purchase agreements in lieu of the governmental unit? The District would then enter into a straight lease with the unit of government. Obviously, once the District satisfies any lease purchase obligation with a vendor, they would then be in a position to transfer title to the property to that local government assuming this is permissible.
 2) Would it also be permissible for any Planning/Economic Development District to add a reasonable cost to cover the cost of administering such activity to any lease arrangement with the local government?
It is my opinion that a conclusive answer to these questions will require a case-by-case determination based upon the particular facts surrounding each agreement. This type of factual review is not within the scope of an opinion from this office. I will, however, in addressing your general questions, outline what I believe are the principal elements of the applicable legal analysis.
As you have noted, these question may implicate the Arkansas constitutional prohibition against the issuance of interest-bearing evidences of indebtedness by counties and cities. Ark. Const. art. 16, 1. As noted in Attorney General Opinion93-383, lease-purchase agreements entered into by counties and cities can be violative of this constitutional provision because many are not truly "lease" agreements, but are actually conditional sales contracts with interest. See, e.g., Brown v. City of Stuttgart, 312 Ark. 97, 847 S.W.2d 710 (1993). As such, they may constitute "interest-bearing evidences of indebtedness" under Article 16, 1.
Your first question requires an initial determination concerning the status of these planning and development districts ("districts") for purposes of Article 16, 1, which states in part as follows:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit, for any purposes whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness. . . .[1]
Although there appear to be no cases directly on point, it may reasonably be concluded, in my opinion, that the districts are not counties, cities, towns or "other [municipalities]" for purposes of the above provision. As noted in your correspondence, the districts are organized as nonprofit corporations. Arkansas Code Annotated 14-166-201(a)(1) states:
 The purpose of this subchapter is to encourage multi-county planning and development organizations which have been formed, or which may be formed in the future, as voluntary nonprofit associations to promote economic development, to assist local governments and private organizations in obtaining federal grants and loans, to prepare comprehensive regional plans for economic development and improved government services, to enlist private support for these activities, and to coordinate private and public programs in the multi-county districts.
The districts receive federal, state, local and private funds. See A.C.A. 14-166-204 and -205 and Gilbreath v. East Ark. Planning and Devel. Dist., 471 F. Supp. 912 (E.D.Ark. 1979). Their operations are solely within the discretion and control of the local governing boards of directors. A.C.A.14-166-203(c)(1). Elected local officials comprise a majority of the districts' governing boards. The remaining members represent economic development organizations and organizations representative of diverse community interests. Id. at subsection (b).
With regard to a district's status as another "municipality" for purposes of art. 16, 1, the line of cases involving improvement districts offers insight into the Arkansas Supreme Court's likely approach to the issue. The court has historically declined to apply art. 16, 1 to levee districts and other local improvement districts, reasoning that while they may be organized to accomplish municipal purposes, they have no legislative powers and lack other essential characteristics of corporations created to administer local government. See Bell v. Fulkerson, 291 Ark. 604, 727 S.W.2d 141
(1987), citing City of Hot Springs v. Creviston, 288 Ark. 286,713 S.W.2d 230 (1986) and Fitzgerald v. Walker, 55 Ark. 148,17 S.W. 702 (1891); Nakdimen v. Bridge Dist., 115 Ark. 194,172 S.W. 272 (1914); Memphis Trust Co. v. St. Francis Levee Dist., 69 Ark. 284, 62 S.W. 902 (1901). Cf. St. Louis, I.M.S. Ry. v. Bd. Dir. Lev. Dist., 103 Ark. 127, 145 S.W. 892
(1912) (regarding Ark. Const. art. 12, 4) and Schmutz v. School District of Little Rock, 78 Ark. 118, 95 S.W. 438 (1906) (holding art. 16, 1 inapplicable to school districts). In concluding that a levee district was not subject to art. 16, 1's prohibition against issuing interest bearing bonds, the court in St. Francis Levee Dist., supra, stated that according to the well-established meaning of the term, a "municipality" is "a public corporation created for governmental purposes, and having local powers of legislation and self-government. . . ."69 Ark. at 286. The court went on to state:
 Now, while every municipality is a public corporation, yet every public corporation is not a municipality, for, as defined above, a municipality is not only a public corporation; it is such a corporation created for governmental purposes, and having, to a large extent, local powers of legislation and self-government. An incorporated levee district, created for the sole purpose of constructing and maintaining a levee, is, like a municipality, a public corporation; but in respect to powers of self-government and legislation it falls far short, and in that regard is clearly distinguished from a municipality, such as an incorporated town or city. These are, to a certain extent, miniature governments, having legislative, executive and judicial powers; but a levee district has few if any such powers, and is not intended to have them, being only an agency created for a special and particular purpose.
 The courts have often recognized the distinction between municipal corporations and these inferior corporations, such as levee districts, school districts, and the like. The distinction was pointed out by the supreme court of Missouri in State v. Leffingwell, 54 Mo. 458, where the court said that the term `municipal corporation' included only cities, towns and other like organizations with political and legislative powers for the local government and police regulation of the inhabitants thereof.
Id.
This case, and the others cited above, offer persuasive reasoning in support of the proposition that the planning and development districts organized under 14-166-201 et seq. are not "municipalities" for purposes of art. 16, 1. While they clearly receive public funds and have been granted broad discretion in the performance of certain public services, they lack the broad legislative, judicial, and political powers that are essential to administering local government. A municipality's powers are broader and more general within its prescribed territory than those conferred on these districts. See generally Altheimer v. Board of Directors of Plum Bayou Levee District, 79 Ark. 229, 95 S.W. 140 (1906).
Nor, in my opinion, is a different conclusion compelled by the fact that local officials comprise a majority of the districts' boards of directors. The districts have not, as distinct entities, been granted governmental powers sufficient to constitute them "municipalities." And that is, I believe, the test according to the foregoing cases.
This factor may, however, contribute to the difficulty of determining whether the districts are in fact agents of a county or city, and as such governed by art. 16, 1. See generally Fitzgerald v. Walker and Nakdimen v. Bridge Dist., supra. Cf. Creviston, supra, 288 Ark. at 290 (stating that Ark. Const. art. 16, 1 of course includes "transparent evasions by which a token commission or other body is created to sign the bonds while disclaiming any responsibility on the part of its creator.") It is my opinion, however, that the agency question would in all likelihood also be resolved in favor of the inapplicability of art. 16, 1. Although a majority of the board is comprised of local officials, there is no required concurrence or approval of the districts' actions by the counties or cities included in the multi-county region. Thus, in my opinion, it cannot reasonably be concluded that the districts simply act for the counties and cities, i.e., as merely administrative arms of city or county government. See generally Adams v. Bryant, 236 Ark. 859, 370 S.W.2d 432 (1963) (holding that a light and water commission created by city ordinance was simply an agent of the city where its exercise of legislative authority required city council approval). The districts act, instead, as agents of the regions whose interests are affected by the activities pursued under14-166-201 et seq. They derive their authority from the legislature, not from the cities and counties. While it may be accurate to say that the elected officials on each district's board together represent local governmental interests, there is no distinct representation of any local unit of government. The board also represents economic development organizations and other organizations broadly representative of diverse community interests. A.C.A. 14-166-203(b). I do not believe it can be fairly stated in that instance that the board is a "token commission" or body created to evade art. 16, 1. See Creviston, supra.
The Gilbreath case, supra, should perhaps also be noted in this regard. The federal district court concluded therein that the challenged actions of the East Arkansas Planning and Development District were under color of state law for purposes of 42 U.S.C. § 1983. The court found a sufficient nexus between the activities of the district and state and local governments to bring the alleged discriminatory practices within scrutiny under 1983. 471 F. Supp. at 922. Particularly significant for our purposes, however, is the fact that the court viewed the district as a "seemingly private" body, and utilized the standard for determining when private conduct becomes "state action." Id. at 921-922. The court obviously did not view the district as an agent of a county or municipality.
It is therefore my opinion that a district could enter into a lease-purchase agreement that included interest without running afoul of Ark. Const. art. 16, 1. With regard to the legality of a lease agreement between a district and a unit of local government, it should be noted that a fact question may arise with respect to the inclusion of interest. You state in your correspondence that the district would enter into a "straight lease" with the unit of government. Assuming by "straight lease" you mean a true lease that contains no interest, it appears that there would be no violation of art. 16, 1. A conclusive determination would, however, require a detailed factual review of the particular agreement. The question of whether interest is built into the lease price is a question of fact. A review of cases under Arkansas' usury laws reflects the courts' inclination to ignore the form of the transaction and closely examine the terms of a so-called "lease" to determine whether it is actually an installment sale carrying an excessive rate of interest. See, e.g., Bell v. Itek Leasing Corp., 262 Ark. 22, 555 S.W.2d 1 (1977); Hill v. Bentco Leasing, Inc., 288 Ark. 623, 708 S.W.2d 608 (1986).[2]
Particularly significant for purposes of the proposal in this instance is the Arkansas Supreme Court's suggestion that the `"most fruitful single test"' to distinguish a sale from a true lease is "the absence of any appreciable residual in the lessor at the expiration of the lease." Bentco Leasing, supra,288 Ark. at 627 (citations omitted). As stated by the court in Itek Leasing, supra:
 The authorities . . . put great emphasis on the amount (in percentages) that the `lessee' must pay to acquire title after all the payments have been made. If the amount is nominal (10% is a figure frequently so described), then the transaction is, patently a sale in leases clothing; for why would a bona fide lessor relinquish a valuable chattel for next to nothing?
262 Ark. at 26.
It must therefore be recognized, with regard to the proposal in question, that the local government's receipt of title at the end of the lease term will raise a serious issue concerning the true nature of the transaction and the inclusion of interest contrary to art. 16, 1. This is not to say that the transaction would be unlawful per se. If it can be demonstrated, as a factual matter, that the transaction is truly a lease with no interest, then it would seem that the agreement would be permissible.
Finally, with regard to the inclusion of an administrative cost in such a lease arrangement, it is my opinion that this charge would be another factor to consider in determining whether the lease actually constitutes a sale with interest. The following language from Bentco Leasing, supra, should be noted:
 In Itek, supra, we expressed concern over conditional sales being disguised as lease agreements, permitting charges that under a credit sale would constitute usury. We warned that such transactions would be closely examined in the future. We initially examined the lease agreement and found it resulted in the payment of an amount over the lease term equal to, or greater than, the stated price of the goods.
If the court took a similar approach to the proposed "lease" in this instance, it might be reluctant to accept the contention that the transaction is truly a lease and the administrative cost should not be treated or characterized as interest. The amount paid over the lease term, including the administrative cost, would likely be viewed in relation to the market price of the goods in making that determination.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
[1] With respect to issuance of bonds, see Ark. Const. Amend. 62
and Amend. 65.
[2] While these cases involve distinguishing leases from sales for purposes of the usury law, the principles employed in making that distinction are equally applicable in determining whether a transaction is not truly a "lease," but actually a sales contract with interest.