H. D. SUTTON *v.* RYDER TRUCK RENTAL, INC.

90-55                                   807 S.W.2d 905

Supreme Court of Arkansas
Opinion delivered April 15, 1991
[Rehearing denied May 13, 1991.]

232

*Friday, Eldredge & Clark*, by: *William A. Waddell, Jr.*, for appellant.

*Michael W. Mitchell* and *Clayton R. Blackstock*, for appellee.

W. W. BASSETT, JR., Special Chief Justice. This case involves a contract dispute. The primary issue is whether a contract between Appellant, H. D. Sutton, and Appellee, Ryder Truck Rental, was a valid lease agreement or a veiled conditional sale contract. Sutton entered into a truck lease and service agreement with Ryder on February 28, 1983. In 1984, and again in 1986, Sutton leased additional vehicles from Ryder. In 1987, Sutton stopped making payments to Ryder under the agreement.

Ryder filed suit against Sutton. Sutton counterclaimed alleging that the agreement was actually a conditional sale which was usurious. Sutton's counterclaim sought damages in the amount of twice the sum of the alleged interest paid by Sutton to Ryder under the agreement.

The case was tried to a jury in August, 1989. The jury found the contract was a valid lease agreement and returned a verdict for Ryder in the amount of $208,072.13. In addition, the trial court awarded Ryder attorney's fees in the amount of $53,256.50. The trial court, however, refused Ryder's claim for expert witness fees in the amount of $24,368. Alleging numerous errors by the trial court and that the jury's verdict was clearly against the preponderance of the evidence, Sutton made a motion for a new trial. The trial court denied Sutton's motion. Sutton appealed. Ryder cross-appealed claiming that the trial court erred in refusing to award expert witness fees. We affirm on both the direct and cross-appeal.

In *Fisher Trucking, Inc.* v. *Fleet Lease, Inc.*, 304 Ark. 451, 803 S.W.2d 888 (1991), this Court stated that the presence of the following five factors would indicate a conditional sale:

(1)  The lessor is a finance company;

(2)  The agreement puts all the risk upon the lessee;

(3)  The agreement provides the same remedies upon the lessee's default in the payment of rent that would be available to a conditional seller or to a mortgagee upon similar delinquency;

(4)  The agreement provides that the lessee will upon the lessor's request join the lessor in executing financial statements pursuant to the Uniform Commercial Code and other assurances the lessor deems necessary for protection of the interest of the lessor in the equipment; and

(5)  There is an absence of any appreciable residual in the lessor at the expiration of the lease.

See also *Hill* v. *Bentco Leasing, Inc.*, 288 Ark. 623, 708 S.W.2d 608 (1986); *Bell* v. *Itek Leasing Corp.*, 262 Ark. 22, 555 S.W.2d 1 (1977).

In applying this analysis, this court has identified the absence of any appreciable residual in the lessor at the expiration of the lease as the "most fruitful single test" to distinguish a conditional sale from a lease. See *Hill*, 288 Ark. 623, 708 S.W.2d 608. Therefore, we place great emphasis on the amount the lessee must pay to acquire title after all payments have been made. See *Fisher Trucking, Inc.* v. *Fleet Lease, Inc.*, 304 Ark. 451, 803 S.W.2d 888.

■ Applying these five factors to the case at bar, we first look to see if the lessor, Ryder, is a finance company. We find that it is not. Ryder leases vehicles and provides other incidental services to its customers associated with the use of these leased vehicles. Sutton not only leased trucks from Ryder, but also utilized many of the incidental services offered by Ryder. The facts show that Ryder is a full service lease company, not a finance company.

■ The facts further show that the agreement did not put all the risk upon the lessee, Sutton. Under the agreement, Ryder assumed the risk of repairs to the leased vehicles and agreed to replace or furnish substitute vehicles for those which became temporarily inoperable because of mechanical failure. Ryder also procured and provided Sutton with liability insurance with combined bodily injury and property damage limits of $750,000 per occurrence. Ryder paid at least one claim on Sutton's behalf in which one of the leased vehicles was completely destroyed and the driver killed. Sutton did not assume all the risk of loss under the agreement.

The answer to the question of whether the lease agreement provided Ryder with the same remedies upon default as those available to a conditional seller or mortgagee upon similar delinquency is somewhat more difficult to reach. Upon default, a secured creditor or mortgagee may declare all remaining payments due, repossess the property, sell it and hold the debtor liable for any deficiency. The Ryder truck lease and service agreement provided that upon default, Ryder could possess the vehicles and demand that Sutton purchase them. However, Ryder does not seek to enforce this remedy. Instead, Ryder sought damages for those lease payments which were actually due and payable in addition to early termination charges provided for under the contract.

Sutton argues that Ryder's right to possess the vehicles upon default and demand that Sutton purchase these vehicles has the same effect as selling the trucks to a third party at a public sale and obtaining a deficiency judgment. While there may be little, if any, practical distinction between the right to possess and demand purchase, and the right to repossess, sell and seek a deficiency judgment, Ryder sought neither of these remedies. Ryder only sought damages for those lease payments that were actually due and payable under the contract and charges for early termination provided for under the contract. Ryder, in effect, sought those damages under the contract for early termination of the lease and not for default.

The fourth factor to be considered is whether the agreement required the lessee, Sutton, to execute a financial statement pursuant to the Uniform Commercial Code or provide other assurances to protect Ryder's interest in the vehicles. The agreement contained no such provision. Moreover, Ryder never requested these additional assurances from Sutton.

Finally, the facts clearly show that Ryder retained an appreciable residual at the expiration of the lease and on each anniversary date of the lease when Sutton could exercise his option to purchase under the contract. Therefore, at no time was the option price nominal.

In *Bell* v. *Itek*, supra, we held that an option price for 10% of the original contract price was nominal. In *Fisher Trucking, Inc.* v. *Fleet Lease, Inc.*, supra, we held that an option price of 50% of the fair market value was not nominal. In the case at bar, at no time was the option price less than 44% of the original contract price. Moreover, at all times, the option price exceeded the fair market value.

In support of his argument that the option purchase price was nominal, Sutton basically relies upon *In Re Puckett*, 60 B.R. 223 (M.D. Tenn. 1986). In that bankruptcy case, the court used the "economic realities" test to determine whether an option purchase price was nominal. Sutton urges this court to adopt the economic realities test and find that the option purchase price was nominal. We decline to do so.

At the trial, Dent Gitchell, a lawyer and professor at the

University of Arkansas Law School in Little Rock, appeared and testified on behalf of Ryder. The upshot of Gitchell's testimony was to inform the jury of the basic remedies available for the breaches of an installment sale contract and lease agreement. Even though the trial court permitted the testimony, it specifically ruled that Gitchell could not couch his testimony in terms of any opinion comparing the remedies under the lease with the normal remedies for an installment sale. Sutton argues that Gitchell's testimony violated Rule 704 of the Arkansas Rules of Evidence because it had the effect of telling the jury what result it should reach as to whether the remedies available to Ryder were the same remedies that would be available to a conditional seller or mortgagee. We disagree.

■ Rule 704 of the Arkansas Rules of Evidence provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Here, it is doubtful that Gitchell ever rendered an opinion. If one was rendered, it certainly did no more than is permitted by Rule 704. See *Gramling* v. *Jennings*, 274 Ark. 346, 625 S.W.2d 463 (1981). While we believe the better practice would have been for the trial court to properly instruct the jury as to the basic remedies available for the breaches of an installment sale contract and lease agreement, we cannot say under the facts in this record, that it was prejudicial error for the court to permit Gitchell's testimony.

At the trial, Gary Welch, a certified public accountant, was prepared to testify on behalf of Sutton that at the expiration of the lease agreement Sutton had "no sensible alternative" but to exercise the option to purchase. The trial court excluded this testimony. Sutton proffered it.

The basis of this proffered testimony was that by exercising the option to purchase, Sutton could operate these vehicles more economically efficient as an owner rather than as a lessee. Sutton proffered the testimony for the purpose of showing that the option purchase price was nominal and the agreement nothing more than a sales contract in disguise. Sutton argues that the trial court erred in excluding this testimony. Once again, we disagree.

■ The question of whether the option purchase price is nominal turns on whether the lessor has retained an appreciable residual at the expiration of the lease. It is *not* determined by analyzing the hard costs of operation over the remaining economic life of the chattel should the lessee choose to exercise the option to purchase. Welch's proffered testimony was, therefore, not relevant evidence that the option purchase price was nominal. The trial court properly excluded it under Rule 402 of the Arkansas Rules of Evidence. Even if the proffered testimony was relevant, its probative value was substantially outweighed by the danger of confusing the issues and misleading the jury and, therefore, not admissible under Rule 403 of the Arkansas Rules of Evidence.

■ Next, Sutton argues that the trial court erred by improperly instructing the jury as to the applicable law. After ruling that Welch's testimony was inadmissible, the court nonetheless proceeded to instruct the jury in its Instruction No. 16 that the lack of a sensible alternative was one factor to be considered by them in determining whether the amount which Sutton must pay to exercise an option to purchase was "nominal". While this part of Instruction No. 16 is inconsistent, it is likewise harmless, as the undisputed evidence shows there was no nominal option price. We find any error on the court's Instruction No. 16 to be harmless error. *Haseman v. Union Bank of Mena*, 597 S.W.2d 67, 268 Ark. 318 (1980). We do not find it necessary to address point by point additional errors that Sutton maintains the trial court committed in instructing the jury. We have reviewed those instructions and find that they adequately instructed the jury as to the law it should apply to this case, and we find no error in the trial court's instructions to the jury.

■ Finally, Sutton argues that the attorney's fee awarded to Ryder by the trial court was excessive. An award of attorney's fees is a matter for the sound discretion of the trial court. Absent an abuse of that discretion, this court will affirm. *Southall v. Farm Bureau Mutual Ins. Co. of Ark., Inc.*, 676 S.W.2d 228, 283 Ark. 335 (1984). In the case at bar, we find that the award was reasonable and that the trial court did not abuse its discretion.

■ In *Robinson v. Champion*, 251 Ark. 817, 475 S.W.2d 677 (1972), this court identified a number of factors that should

be taken into account in determining the reasonableness of an attorney's fee. Among these considerations were the attorney's skill and experience, relationship between the parties, difficulty of services, extent of litigation, time and labor devoted to the cause, fee customarily charged, and the results obtained. These factors are also set forth in Rule 1.5 of the Model Rules of Professional Conduct. These rules, of course, have been adopted by this court.

Applying these factors to the case at bar, we have no difficulty in concluding that the attorney's fee awarded Ryder by the trial court was reasonable. The charges for the services provided by Ryder's attorneys are well documented through affidavits and an extensive itemized statement. Given the nature, complexity and duration of this case, Ryder's charges were justified and the attorney's fee awarded Ryder was reasonable.

■ Lastly, we address the issue raised by Ryder on its cross-appeal. Ryder argues that the trial court erred by denying its claim for expert witness fees in the amount of $24,368. The allowance of costs is purely statutory, and in the absence of a statute, the fees of expert witnesses cannot be charged against the losing party. *State Highway Comm.* v. *Union Planters Nat'l Bank*, 231 Ark. 907, 333 S.W.2d 904 (1960). Arkansas has no statute which allows Ryder to recover expert witness fees in this case. Therefore, we affirm the trial court's decision denying Ryder's claim for expert witness fees.

HOLT, Chief Justice, not participating.