Mason BROWN *v.* CITY OF STUTTGART, Arkansas and First Continental Financial Corporation

92-849                                    847 S.W.2d 710

Supreme Court of Arkansas
Opinion delivered February 22, 1993
[Rehearing denied April 5, 1993.]

*The Eilbott Law Firm*, by: *Don A. Eilbott*, for appellant.

*Williams & Anderson*, by: *W. Jackson Williams, David F. Menz*, and *G. Alan Perkins*, for appellee.

JACK HOLT, JR., Justice. This is an action challenging the validity of a tax exempt lease agreement between the City of Stuttgart and First Continental Financial Corporation on the grounds that the lease contains interest bearing evidence of indebtedness in violation of Ark. Const., art. 16, § 1. We find that it does and reverse the trial court.

The appellees, City of Stuttgart and First Continental Financial Corporation, entered into a lease agreement for a garbage truck. Stuttgart chose this method of acquisition because it did not have enough cash to purchase the garbage truck in one year. A sixty month lease with option to purchase seemed a much more viable alternative.

Under the terms of the lease, Stuttgart is obligated to lease the garbage truck for sixty months. However, a nonappropriation clause in the lease provides that the lease shall terminate unless sufficient funds are appropriated and budgeted or authorized by the city. In short, the lease is enforceable only if the city appropriates money for the current fiscal year. In the event of termination of the lease by nonappropriation, the city agrees to surrender possession of the equipment to the lessor and would have no liability beyond the current fiscal year for which funds were appropriated.

This type of municipal lease is authorized under Arkansas Act 508 of 1991, codified at Ark. Code Ann. § 14-76-101 — 108 (Supp. 1991), and specifically under Stuttgart Ordinance No. 1369 entitled: "An Ordinance Authorizing a Lease Agreement Between the City of Stuttgart, Arkansas, as Lessee, and First Continental Financial Corporation, as Lessor, for a Garbage Truck for the City of Stuttgart, Arkansas and Related Accessories; Authorizing and Prescribing Other Matters Pertaining

Thereto; and Declaring an Emergency."

Petitioner, Mason Brown, contends that this lease agreement is void because it violates Ark. Const., art. 16, § 1:

> § 1. Lending credit - Bond issues - Interest bearing warrants.
>
> Neither the State nor any city, county town or other municipality in this State shall ever lend its credit for any purpose whatever; *nor shall any county, city, or town or municipality ever issue any interest bearing evidences of indebtedness*, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.

(Emphasis added.)

Act 508 of 1991 authorizes governmental units (defined as counties, municipalities, etc.) to enter into:

> multiyear lease agreement and purchase contracts of all kinds for the acquisition, refinancing and sale and lease-back of capital improvements, facilities, equipment, goods, supplies, materials and all other types of personal property, real property and services that the governmental unit is authorized by law to acquire; provided that any such multiyear agreement or purchase contract shall contain provisions as follows:
>
> (a) The contract shall terminate without further obligation on the part of the governmental unit at the close of the fiscal year in which it was executed and at the close of each succeeding fiscal year for which it may be renewed; except that the contract may provide for automatic renewal unless positive action is taken by the governmental unit to terminate such contract, and the nature of such action shall be determined by the governmental unit and specified in the contract; and
>
> (b) The contract shall state the total obligation for the rental payments of the governmental unit for the fiscal year of execution and shall further state the total obliga-

tion for the rental payments which will be incurred in each fiscal year of each renewal term, if renewed. . . .

. . . . . . .

. . .[A]ny multiyear lease agreement or purchase contract authorized herein may, but is not required to include:

(a) A provision which requires that the contract will terminate at such time as appropriated and otherwise unobligated funds are no longer available to satisfy the obligations of the governmental unit under the contract.

Mason Brown brought this suit as a "citizen and taxpayer of the City of Stuttgart." He challenged the constitutionality of Act 508 and Stuttgart's ordinance and the validity of the lease itself.

The lease at issue was entered into on September 1, 1991. The lease provides for sixty monthly payments. At the end of the sixty payments, interest paid will total $11,138.36; principal paid will be $64,026.04. Pursuant to the lease agreement, the city has an option to buy the garbage truck for $10.00 at the end of the sixty months.

At trial Stuttgart mayor, H.E. "Pete" Raines, testified that the lease purchase agreements provide cities with a means to acquire new equipment. For example, Stuttgart had been saving $20,000 a year since 1988 for a new fire truck. When the city began saving, the fire truck cost about $105,000. After saving for three years, the cost has risen to between $125,000 and $130,000. Budgeting problems such as this could be eased by leasing. The mayor also stated that the city had not used lease financing in the past because he thought it was illegal.

Mr. Greg Eden, a bond lawyer, also testified for the defense. As an expert on municipal lease agreements, he drafted the lease agreements used by First Continental Financial Corporation. He contended that a tax exempt lease purchase contract is the cheapest means of acquisition of needed items. Mr. Eden also stated that while a lease expense is considered a current expense, it is not considered to be a debt.

After the hearing, the trial court took the case under advisement. Later it found that although it was suspicious of the statute and the lease as attempts to circumvent the state constitu-

tion, they were valid and not violative of the state constitution. It is from these findings that Mr. Brown brings this appeal.

■ We review chancery cases de novo. We recognize the chancellor's superior position in weighing issues of credibility and will not reverse findings of fact unless the chancellor's findings are clearly erroneous. *Medalist Forming Sys., Inc.* v. *Malvern Nat'l Bank*, 309 Ark. 561, 832 S.W.2d 228 (1992); *McElroy* v. *Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991).

■ The appellant, Mr. Brown, argues that the lease violates Article 16, § 1, of the Arkansas Constitution. We agree. The words of the Constitution "should ordinarily be given their obvious and natural meaning." *Gipson* v. *Maner*, 225 Ark. 976, 980, 287 S.W.2d 467 (1956). *See also City of Hot Springs* v. *Creviston*, 288 Ark. 286, 290, 705 S.W.2d 415 (1986). Article 16, § 1, clearly states, "nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law."

A lease payment schedule is appended to the lease agreement at issue. Mr. Brown alludes to this schedule in his brief, and it has been examined in full. This schedule sets forth the monthly payments for which Stuttgart is responsible under the lease.

This "lease payment schedule" is clearly an amortization schedule complete with a statement of principal and interest to be paid. City of Stuttgart and First Continental assert that because the lease agreement provides for the lease payments to be paid from appropriated funds on hand for the current year, the lease does not constitute interest bearing debt. Yet, the lease payment schedule reflects a plan of payments covering five years in which interest and equity accrue. This being the case, the lease constitutes interest bearing evidence of indebtedness. While it is true that the City of Stuttgart is not bound by the lease if the city cannot appropriate funds, the cancellation of the lease results in lost equity and interest.

City of Stuttgart also contends that because the lease agreement includes the nonappropriation clause, the lease may be deemed to be cancelable without penalty and, therefore, considered to be rent and not interest bearing indebtedness. In support of this argument, it cites *Crumley* v. *Berry*, 298 Ark. 112,

766 S.W.2d 7 (1989). In *Crumley* the appellant entered into a rental with option to purchase contract for a used refrigerator and microwave oven. There was no requirement that she continue the contract beyond one week. However, there was an option to buy the specified property after an agreed number of weeks with the consideration being only that she pay the rental fee for a predesignated number of weeks.

Ms. Crumley made her weekly payments for a time. When she determined that she had made payments equal to the cash price of the items, she stopped making payments and refused to surrender the items arguing that she had paid for them.

In determining that the transaction between Ms. Crumley and the appliance store was a lease and not a sale this court held:

> [W]e hold that the sounder view requires as a prerequisite to finding a sale, that there be an obligation to pay the purchase price of the leased goods. There may be exceptions to this general proposition, for example where in spite of the language of the contract, the lessor is clearly led to believe the arrangement is a sale.

*Crumley* v. *Berry*, 298 Ark. 112, 117 (1989).

In applying the *Crumley* analysis to the facts at hand, the lease between the City of Stuttgart and First Continental is clearly seen as a sale. Although the lease agreement allows the "lease" to be canceled without penalty if funds are not appropriated, nonappropriation is the only way out of the contract without penalty. As the Lease Agreement sets out in Article IV, the lease term may terminate upon the following events:

> Section 4.02. *Termination of Lease Term.* The Lease Term will terminate upon the earliest of the following events:
>
> (a)  the payment by Lessee of all Lease Payments authorized or required to be paid by Lessee hereunder;
>
> (b)  the termination of the Lease in the event of nonappropriation of funds pursuant to Section 8.02 hereof;
>
> (c)  a default by Lessee and Lessor's election to terminate

this Lease under Article XIV.

In the event of default, the Lease Agreement provides that:

Section 14.02 *Remedies on Default.* Upon the occurrence of an Event of Default, and as long as such Event of Default is continuing, Lessor may, at its option, exercise any one or more of the following remedies:

(a)   With or without terminating the Lease, retake possession of the Equipment wherever situated, without any court order or other process of law and without liability for entering the premises, and sell, lease, sublease or make other disposition of the Equipment in a commercially reasonable manner, retaining all proceeds of such disposition, including, if any, funds in excess of the amounts payable by Lessee hereunder holding Lessee liable for the deficiency, if any, between (i) the amounts payable by Lessee hereunder to the end of the then current fiscal year of Lessee and (ii) the purchase price, rent or other amounts paid by a purchaser, lessee or sublessee of the Equipment pursuant to such sale, lease or sublease, after deducting all costs and expenses, including reasonable attorneys' fees and expenses, incurred with the recovery, repair or storage of the Equipment and other disposition costs; or

(b)   Proceed by appropriate court action to enforce performance by Lessee the applicable covenants of this Lease or to recover for the breach thereof including the payment of the Lease Payments due or to become due hereunder, or any deficiency, following disposition of the Equipment between (i) the amounts payable by Lessee hereunder to the end of the then current fiscal year of the Lessee and (ii) the purchase price, rent or other amounts paid by a purchase, lessee, or sublessee of the Equipment pursuant to such sale, lease or sublease, after deducting all costs and expenses, including reasonable attorneys' fees and expenses, incurred with the recovery, repair or storage of the Equipment and other disposition costs; or

(c)   Terminate this Lease and use, operate, lease or hold the Equipment as Lessor, in its sole discretion, may decide.

The penalty for defaulting on this lease agreement is great;

thus, absent inability to appropriate funds for the year, the City of Stuttgart is obligated to fulfill this contract to the end of the lease period of five years.

Further indicia of the fact that this is a contract for sale rather than a lease are its tax exempt status, its relation to a bond issue and counsel's admission in oral argument that the lessee anticipated selling certificates of participation in the leases. Pursuant to section 103 of the Internal Revenue Code, this type lease includes a tax exempt interest component. In order to qualify for this tax exempt status, the lease contract "must constitute an obligation of the governmental unit's borrowing power under federal tax law. . . . [A]lthough the agreement may take the form of a lease, the contract must contemplate a sale." Reuven Mark Bisk, *State and Municipal Lease-Purchase Agreements: A Reassessment,* 7 Harvard J.L. Pub. Pol'y 521, 534 n. 74 (1984).

Lastly, we note this tax exempt lease contract has a direct relationship to a bond issue as the interest component of the "lease" is tax exempt under federal law. *See* Jon Magnusson, *Lease-Financing by Municipal Corporations as a Way Around Debt Limitations,* George Washington L. Rev. 377, 391 (1957).

We sympathize with the budgeting problems of municipalities and understand the need to find unique methods of purchasing capital items. However, this lease agreement contains an interest bearing indebtedness counter to Article 16, § 1, of our state Constitution. As such we reverse the findings of the chancery court and hold that the lease agreement is invalid.

Since we conclude that the lease agreement is counter to Ark. Const. art 16, § 1, it is not necessary to consider further the constitutionality of Act 508 of 1991 or Ordinance No. 1369 as argued by the parties.

Reversed and remanded.

BROWN, J., concurs.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. Whatever else may be said of this agreement, the City of Stuttgart is not bound by it if, during any fiscal year, the city lacks the funds needed to meet its

obligations under the lease. That, in my view, renders the agreement permissible under Act 508 of 1991 and conformable with Ark. Const. art. 12, § 4. Whether the arrangement more nearly resembles a sale than a lease need not concern us in the slightest, so long as its terms and conditions are within the bounds of the law.

It seems odd the majority would include a reference to Reuven Mark Bisk, *State and Municipal Lease-Purchase Agreements: A Reassessment*, 7 Harvard J.L. Pub. Pol'y 521, 534 n. 74 (1984). Under section E (p. 536) Mr. Bisk discusses those cases upholding lease-purchase agreements with a nonappropriation clause, observing that:

> No general obligation constitutional debt arises under lease-purchase agreements with a nonappropriation mechanism, Wisconsin's approach teaches, because the very existence of that obligation is contingent upon the city's exercise of an option fully within its own control.

Mr. Bisk discusses the lease-purchase issue, which so absorbs the majority in this case:

> The Wisconsin approach "dismisses the 'bona fide' lease versus purchase installment issue as largely irrelevant to the context of state and municipal debt limitations once a nonappropriation mechanism has been introduced. The Wisconsin court does not consider these principles invalid but rather inapplicable. Instead, it speaks directly to the nature of constitutionally restricted debt. Debt, we are told, arises under any instrument, including a lease-purchase agreement, *only* when there is a promise to pay sums such as rents accruing in the future *whether funds are available that year or not*." [My emphasis.]

The majority dismisses the provision in the lease for termination with the comment that it would result in lost equity and interest. But we have often said (and often disregarded) that the prudence of the acts and measures of other branches of government are not within the purview of this branch. *Arkansas State Highway Commission* v. *White*, 273 Ark. 264, 620 S.W.2d 280 (1981); *Commissioner of Revenues* v. *Dillards, Inc.*, 224 Ark. 826, 276 S.W.2d 424 (1955). I would affirm the chancellor's order.