The Honorable Joe Molinaro State Representative 204 Amber Oaks Drive Sherwood, AR 72120
Dear Representative Molinaro:
This is in response to your request for an opinion regarding certain proposed transactions involving the Sylvan Hills Volunteer Fire Department ("Department"). You have submitted two specific proposals, and have requested an opinion as to the legality of the contracts in light of Act 183 of 1939, under which the Department was formed.
It must be initially noted that a conclusive answer to your question would require construction of the agreements, a matter that is not ordinarily within the scope of an Attorney General opinion. This office lacks the resources and the authority to undertake a factual review of the terms of specific contracts. I will, however, address the legal analysis that will guide the factual review. I will also highlight certain aspects of each contract which may be relevant under the analysis.
As you indicate in your request, Act 183 of 1939 contains a debt limitation. Section 12 of the 1939 act, which is codified at A.C.A. 14-284-117, states in pertinent part as follows:
 The petition for the creation of a district in the court order creating the district shall limit the total amount of notes that may be outstanding at any time, but the limits may be increased to the maximum prescribed in this section by a vote of a majority in value of the owners of real property in the district. No district created pursuant to this section shall have notes outstanding at any one time in excess of fifty thousand dollars ($50,000).
A.C.A. 14-284-117(a)(2) and (3) (1987).
The question, therefore, is whether the Department, by virtue of either of the proposed contracts, would have notes outstanding in excess of $50,000.00.[1] The term "notes" is not defined under this Code provision. Black's Law Dictionary (5th ed.) defines "note" as:
 An instrument containing an express and absolute promise of signer (i.e. maker) to pay to a specified person or order, or bearer, a definite sum of money at a specified time. Two-party instrument made by the maker and payable to payee which is negotiable if signed by the maker and contains an unconditional promise to pay sum certain in money, on demand or at a definite time, to order or bearer. . . .
Black's at 956. See also Webster's Seventh New Collegiate Dictionary 576 (1972) (defining "note" as inter alia, "a written promise to pay a debt[;]" Blevins v. Blevins, 4 Ark. 441, 442
(1842) (stating that under the legal definition of a "note," "[t]he payment . . . must be absolute, and not contingent, either as to the amount, credit, fund, or person.")
It is my opinion that a court would in all likelihood look to the above definitions in the absence of a statutory definition of "notes" under A.C.A. 14-284-117. It may therefore be concluded that the key inquiry is whether the agreements in question contain absolute, unconditional promises to pay a debt that exceeds $50,000.00. Although, as noted above, this ultimately requires a factual determination, several provisions in the document entitled "Volunteer Fire Department Master Lease — Purchase Agreement" should be noted. Article V of the Agreement indicates that the Department's obligation to make rental payments would be "absolute and unconditional in all events." See Art. V, Sec. 5.2. It may also be significant to note that under that Agreement, the Department's failure to pay any rental payment would constitute an "event of default" authorizing the lessor to, inter alia, "declare the then applicable Prepayment Price . . . to be immediately due and payable. . . ." See Art. XII, Sec. 12.1(a) and Sec. 12.2(a). These provisions render the Agreement suspect, in my opinion, under A.C.A. 14-284-117. Although the payment under each "Rental Payment" is $49,717.01, the total payment amount is $497,170.10 (see Sylvan Hills Fire Protection Dist. No. 6 "Schedule of Rental Payments Relating to Equipment"), which obviously far exceeds the $50,000.00 statutory limitation.
With regard to the proposal entitled "Master Municipal Lease and Option Agreement," the "non-appropriation" provision (Art. 6, Sec. 6.06) suggests that the transaction is structured as a year to year renewable lease. Because the rental payment for each term is in the amount of $49,846.39, the Department would not have notes outstanding in excess of $50,000.00 under such a structure.[2] There appear to be no Arkansas cases directly on point. In the context of constitutional restrictions on municipal debt, however, there is support for the proposition that no "debt" is created if only a contingent future liability has been incurred by the municipality. 15 McQuillan on Municipal Corporations 41.23. A municipal "debt" generally is defined as an unconditional promise of the municipality to pay a sum now due or to become due in the future. Id. at 41.18. Also, a contract that is payable solely from current revenues of a municipality is not generally characterized as a "debt." 56 Am.Jur.2d Municipal Corporations 619.
The above principles, and cases analyzing certain leases following those principles (see 145 A.L.R. 1358), suggest that a properly drafted municipal lease creates no "debt" or "evidence of indebtedness" for purposes of constitutional debt limitations. A similar argument may apply for purposes of the limitation on outstanding notes under A.C.A. 14-284-117. The argument is that where there is no current obligation to make a payment exceeding $50,000.00, 14-284-117 is not violated. The terms of the underlying contract will, however, control. It should be noted in this regard that the lessee's obligation in the event of termination of the lease is a factor to be considered in the context of constitutional debt limitations. See, e.g., Davis v. Board of Education of the City of Newport, 260 Ky. 294,83 S.W.2d 34 (1935) (obligations in the event of a default or termination were limited to the current year's rental plus return of the facility); Mississippi Valley Power Company v. Waterworks District No. 1, 185 Ark. 76, 46 S.W.2d 32 (1932) (holding that there was no obligation for future payments where the remedy of the seller or lessor in the event of default or termination was to retake possession of the equipment and sell it.)
While it is my opinion that a compelling argument can be made in support of the proposition that a year to year renewable lease subject to appropriation would not be violative of 14-284-117, as long as the required yearly payment did not exceed the applicable limitation, the question may ultimately require resort to the courts. It should perhaps be noted that the Arkansas Supreme Court, in Brown v. City of Stuttgart, 312 Ark. 97, 847 S.W.2d 710
(1993), recently rejected the contention that because the lease agreement in question included a nonappropriation clause, it may be considered rent and not interest bearing indebtedness for purposes of the interest prohibition contained in Article 16, 1
of the Arkansas Constitution. 312 Ark. at 101. The court held that the "lease" was "clearly seen as a sale" (id. at 102), stating:
 Although the lease agreement allows the `lease' to be cancelled without penalty if funds are not appropriated, nonappropriation is the only way out of the contract without penalty.
Id.
While the court in City of Stuttgart was clearly not addressing A.C.A. 14-284-117 or the Arkansas constitutional limitation on municipal debt (Ark. Const. art. 12, 4, as amended by Ark. Const. amend. 10), and is therefore distinguishable on that basis, it at least raises a question and prevents a clear pronouncement regarding the likely judicial resolution of the issues raised in your request.
While I am therefore unable to conclusively answer your question, in part due to the required factual analysis, the foregoing will hopefully offer guidance on the underlying legal issues.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] This assumes that $50,000.00 is, in fact, the applicable limit (see 14-284-117(a)(2)), and that the contracts in question are the only relevant agreements.
[2] Again, as with the other proposal, a conclusive determination concerning the total amount of the Department's obligation under this Agreement would require a factual review. Section 6.06, entitled "Non-appropriation," should be closely scrutinized in this regard, with particular attention focused on the lessor's right to recover interest in the event of non-appropriation. If the Department would, by virtue of this provision, incur an obligation in excess of $50,000 in the event of non-appropriation, a question might arise under A.C.A.14-284-117. See discussion infra regarding constitutional limitations on municipal debt.