The Honorable Sam E. Angel II State Representative P.O. Box 748 Lake Village, Arkansas 71653
Dear Representative Angel:
This is in response to your request for an opinion on the validity of a blank lease agreement which has been provided to the City of Lake Village by "Consolidated Financial Resources, Inc.," a potential lessor of equipment to the City. You have enclosed a copy of this unexecuted lease agreement for my review, and ask whether it is a valid lease under the "Local Government Lease Act of 1991" and any other existing Arkansas law pertaining to the issue.
The nature of the Arkansas law on this issue precludes a conclusive response with reference to a blank or unexecuted lease. That is, in order to determine the validity of such a lease, the dollar amounts comprising the payment schedule, the timing of the payments, and the value of the equipment at both the beginning and the expiration of the lease term would have to be examined. In addition, a court faced with this question would in all likelihood admit "parol" or oral evidence to indicate the true intention of the parties, even if such intention was contrary to the express language of the lease. The question you have posed is therefore inherently factual, and cannot be answered in the abstract, with reference to a blank lease agreement. In addition, the Attorney General, in the issuing of Attorney General opinions, is neither equipped nor empowered as a factfinder. Your question can be most appropriately answered by the Lake Village City Attorney, who has access to all the pertinent facts and circumstances. I can, however, set out some general principles of law governing the issue, in an effort to aid the City in analyzing the particular facts surrounding this lease.
The seminal case on the question is Brown v. City of Stuttgart,312 Ark. 97, 847 S.W.2d 710 (1993). In Brown, the Arkansas Supreme Court struck down a municipal lease agreement executed for the purpose of acquiring a garbage truck. Under the terms of the lease, the City of Stuttgart was obligated to lease the truck for sixty months. A "nonappropriation clause" provided that the lease would terminate unless sufficient funds were appropriated and budgeted by the City. In the event of termination by reason of nonappropriation, the City would surrender possession of the truck to the lessor and would have no liability beyond the current fiscal year. The plaintiff argued that the lease agreement violated Arkansas Constitution, art.16, § 1, which provides as follows:
 Neither the State nor any city, county town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city, or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest bearing treasury warrants or scrip. [Emphasis added.]
The court held that the lease agreement in Brown violated the provision above. The lease represented an "interest bearing evidence of indebtedness" because the lease payment schedule reflected a plan of payments covering five years in which interest and equity accrued. The court concluded that the "nonappropriation clause" did not save the lease from constitutional infirmity, stating that the "cancellation of the lease result[ed] in lost equity and interest." 312 Ark. at 101. The City also argued that because of the nonappropriation clause, the lease could be deemed to be cancelable without penalty and therefore the payments could be considered "rent" and not payments toward an "interest bearing evidence of indebtedness." The court disagreed, and entered into a discussion of the distinction between a true "lease" and a lease which is in actuality a "sale." The court, noting that the only way out of the lease at issue in Brown, without penalty, was through nonappropriation, concluded that the lease was really a "sale" with an interest component. It was thus objectionable under Art. 16, § 1. In light of this conclusion, the court did not have to address the constitutionality of the "Local Government Lease Act of 1991," which had been raised by the plaintiff.
As noted above, I cannot determine whether a blank or unexecuted lease agreement constitutes an "interest bearing evidence of indebtedness." I will note, however, that the blank lease agreement submitted with your request contains many of the provisions a court will find as evidence of a "sale" rather than a lease. The test for making such a determination was set out most recently in Sutton v. Ryder Truck Rental, Inc.,305 Ark. 231, 807 S.W.2d 905 (1991). The court set out five factors therein, the presence of which would indicate a conditional sale rather than a lease:
1. The lessor is a finance company;
2. The agreement puts all the risk on the lessee;
 3. The agreement provides the same remedies upon the lessee's default in the payment of rent that would be available to a conditional seller or to a mortgagee upon similar delinquency;
 4. The agreement provides that the lessee will upon the lessor's request join the lessor in executing financing statements pursuant to the Uniform Commercial Code and other assurances the lessor deems necessary for protection of the interest of the lessor in the equipment; and
 5. There is an absence of any appreciable residual in the lessor at the expiration of the lease.
The court has indicated that the fifth factor (the absence of any appreciable residual in the lessor at the expiration of the lease) is the "most fruitful single test" to distinguish a conditional sale from a lease. See Hill v. Bentco Leasing, Inc., 288 Ark. 623, 708 S.W.2d 608
(1986). The court will thus place great emphasis on the amount the lessee must pay to acquire title after all payments have been made. See FisherTrucking, Inc. v. Fleet Lease, Inc., 304 Ark. 451, 803 S.W.2d 888
(1991). It appears from the blank lease submitted with your request, although there may be unresolved issues of fact in this regard, that all of the first four factors are present. The presence of the fifth factor would require a factual analysis of the dollar amounts comprising the payment schedule and an analysis of the value of the equipment at the beginning and end of the lease term. I cannot, therefore, determine the presence of this factor.
There are several other noteworthy portions of the blank lease agreement. The lease states in Paragraph 1, that "this is a noncancellable lease for the term indicated above." It is also stated in Paragraph 2 that "Lease payments will be due despite dissatisfaction with Equipment for any reason." It appears, therefore, that the only way out of the lease is through the "Non-Appropriations Rider" attached to the lease. This is similar to the lease in Brown, which the court struck down. A truly terminable lease, which contained no obligation on the part of the lessee to make payments equal to the purchase price and which could be terminated at any time, is not seen as a sale. See Crumley v.Berry, 298 Ark. 112, 766 S.W.2d 7 (1989).
Two other provisions of the "lease," however, appear, at least on their face, to weigh in favor of a finding of a true lease. Paragraph 4 of the lease agreement states that "unless otherwise agreed in writing, Lessee shall have no right to purchase or otherwise acquire title to ownership of any of the Equipment." Paragraph 15 provides for return of the property to the lessor at the expiration of the lease. It has been held, however, that a statement in a lease agreement that the lessee has no right to purchase the property does not keep the transaction from being a sale, where the salesman represents that the property could be purchased for a nominal amount after the expiration of the lease, or that the practice of the finance company is simply not to retrieve the property at the end of the lease. Hill v. Bentco Leasing, Inc., supra, and StandardLeasing Corp. v. Schmidt Aviation, 264 Ark. 851, 576 S.W.2d 181 (1979). In the former case it was stated:
 Drafting variants which have not impressed the courts are options to purchase before the price has been fully paid or arrangements under which there is no option to purchase at any time but where the aggregate rentals approximate the value (or purchase price) of the goods. Gilmore, Security Interest in Personal Property, (1965), Vol. 1, § 3.6.
 The absence of an express transfer or option does not dispose of the question. As has been noted, `Since the parties to these transactions are often clever in their attempts to disguise a finance transaction as a true lease, ownership should be liberally defined.' [Citations omitted.]
288 Ark. at 626.
As stated above, the court in Hill noted that the most fruitful single test is the absence of any appreciable residual in the lessor at the expiration of the lease. This test requires an analysis of the dollars figures pertinent to the lease, which should be undertaken by Lake Village city officials, with the aid of the City Attorney.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh